JAMES Y. ANTHONY & others *vs.* FLOYD TRAVIS.

Bristol.    October 24, 1888. — November 28, 1888.

Present: MORTON, C. J., DEVENS, W. ALLEN, C. ALLEN, & KNOWLTON, JJ.

*Exceptions — Waiver by Motion for New Trial — Withdrawal of Evidence from Jury — Mistrial.*

An excepting party at a trial, after filing his exceptions, also filed a motion for a new trial, embracing the same questions of law, and proceeded to argue the motion at the suggestion of the presiding judge, who overruled it and allowed the exceptions.  *Held*, that there was no waiver of the exceptions.

At the trial of an action brought by a lessor against his lessee to recover for repairs on the demised premises, made by him under an alleged agreement with the lessee, the latter set up an eviction as a defence.  The presiding judge overruled a motion to strike out of an auditor's report all that related to the eviction, and, without then ruling on the question and against the lessor's objection, admitted the lessee's evidence on that subject.  When the evidence was substantially in, the judge stated that he should rule that the eviction did not constitute a defence ; the lessee's counsel in his argument stated, without comment, that the question of eviction and all evidence pertaining to it were out of the case; and the judge instructed the jury that that defence was not open, submitting to them merely the question of the lessee's agreeing to the repairs.  The auditor's report went to the jury without objection by the lessor, or any special attention being called to it.  *Held*, that the lessor had no ground of exception.

CONTRACT by lessors against a lessee, to recover in part the cost of repairs made by them on the demised premises under an alleged agreement with the lessee.  Trial in the Superior Court, before *Lathrop*, J., who allowed a bill of exceptions, in substance as follows.

The lease recited the demise by the plaintiffs to the defendant of the "City Hotel, so called, situate in City Square in the city of Taunton, and comprising all the City Hotel building with the exception of the rooms therein used for stores and offices," to be used as a hotel; and, after providing, among other things not material, that the lessee should pay a certain yearly rent in monthly instalments, concluded as follows:

"The lessors may enter to view and make improvements, and expel the lessee if he shall fail to pay the rent as aforesaid, or the percentage on repairs and improvements hereinafter mentioned, or make or suffer any strip or waste thereof. The lessee agrees that all repairs shall be made by him and at his expense, except as hereinafter provided. The lessors may make such repairs and improvements as the lessee shall agree to with them, which repairs and improvements shall be at the expense of the lessors, and the lessee agrees to pay to the lessors ten (10) per cent per annum on the cost of such repairs and improvements agreed on as aforesaid, the said ten per cent to be paid from the time said improvements and repairs are completed until the end of said term, and to be paid at the times reserved for payment of the rent as aforesaid."

Among the defences set up by the defendant was that of his eviction by the plaintiffs from the demised premises. The report of an auditor, to whom the case was referred to hear the parties, examine their vouchers, and state the accounts between them, passed upon the question of the defendant's alleged eviction. The plaintiffs filed a motion that so much of the auditor's report as referred to the alleged eviction should be stricken out. The judge overruled the motion, and, against the objection of the plaintiffs, admitted evidence on that question.

It was agreed, or appeared from the auditor's report, which was read in full to the jury, that at the date of the lease the City Hotel property comprised the City Hotel building and a lot of land, or yard, in the rear of that building; that there was no interior communication between that portion of the building used for a hotel and the stores therein mentioned in the lease; that the supplies for the hotel were brought to it through this yard, which was used for various purposes by the lessee and to some extent by the occupants of the stores, the latter using it,

as the lessee contended, with his permission; and that after the lease was given the lessors erected a brick building over nearly the entire yard, leaving but a narrow passageway over the extreme edge of it to the rear of the hotel. The defendant, who continued without objection to occupy the hotel, and to pay his monthly instalments of rent as they accrued, and to use this passageway, contended that this yard passed to him under the lease, that the erection of this building in the yard was an eviction, and that his use of the passageway was under protest; and, under the ruling of the presiding judge, introduced much evidence to prove that his occupation and enjoyment of the estate were thereby interfered with, and that he was seriously damaged. The jury took a view of the leased premises, and the defendant called to their attention all the elements of damage relied on by him.

The plaintiffs contended that, according to the true construction of the lease, the lot of land in the rear of the hotel building did not pass as part of the demised premises, but only that part of the building which constituted the City Hotel, with such easements in the yard or lot as were reasonably necessary to its enjoyment; that the erection of these stores did not constitute an eviction; that if it did, the defendant had waived the eviction by continuing in possession and paying rent; and that the defendant's remedy, if his enjoyment of the demised premises had been interfered with, was by action for breach of the implied covenant for quiet enjoyment.

When the defendant's testimony was substantially all in, the judge stated to counsel that he should rule that eviction did not constitute a defence in this case, and that — as the defendant admitted that if eviction was not a defence he was liable for the percentage on repairs to the amount of $4,000, and the plaintiffs contended that he was also liable for the percentage on a plumbing bill in addition amounting to $2,500, or $6,500 in all — the only question which would be submitted to the jury was that of amount, and that the verdict should be for the plaintiffs, either for the percentage on $4,000 or on $6,500, these amounts having been agreed upon by the parties. To this course of proceeding no objection was made by the plaintiffs' counsel, and no testimony was offered by the plaintiffs in rebuttal of the defendant's

testimony as to the damage caused him by the encroachment of the building upon the yard. No comment was made by the defendant's counsel in arguing the case to the jury upon the question of eviction, except to state that the question itself and all evidence pertaining to it had been ruled out of the case by the judge, and taken away from their consideration; but the defendant's counsel argued that the defendant had nothing to do with the plumbing bill, and that the lessors put in the plumbing at their own expense, and agreed with the defendant to put it in at their own expense, or that they put it in without any agreement on the part of the defendant.

The judge instructed the jury, that the defence of eviction was not open to the defendant; that "for the purposes of this case we may lay out of the case entirely some of the questions on which evidence has been introduced to you, namely, the question whether this land passed to the defendant, and also the question whether he has been evicted from a portion of that land"; and submitted to them, as the only question in the case, "whether the plumbing repairs were made by the plaintiffs under an agreement with the lessee."

The auditor's report went to the jury with the other papers in the case, and neither side made any request as to what papers should go to the jury, nor was the attention of the judge called to the matter at the time.

The jury returned a verdict for the plaintiffs for ten per cent of $4,000; and the plaintiffs alleged exceptions to the above rulings.

The following indorsement appeared upon the bill of exceptions, signed by the judge, under date of May 5, 1888:

"This bill of exceptions was settled before me on April 28, 1888, and signed by me, but at my request it was recopied and presented to me to-day for signature, after a motion for a new trial previously filed in the case had been argued. The defendant objected to the allowance of the exceptions, on the ground that the plaintiffs, having made and filed a motion to set aside the verdict, the ground of which is, that, as matter of law, the court did not sufficiently instruct the jury not to consider evidence of eviction as bearing upon the sole issue before them, and having fully argued this question of law before this court, they

have waived the right to have their exceptions allowed. The
motion for a new trial, a copy of which is annexed to this bill of
exceptions, was, at my suggestion, argued before me after the
exceptions. The defendant's objection was overruled, and the
exceptions allowed, and the defendant excepted."

The motion for a new trial annexed to the bill set out, among
other grounds, the following :

" The trial proceeded upon a theory which allowed the de-
fendant to introduce evidence, against the objection of the plain-
tiffs, upon the subject of eviction, which must have prejudiced
the jury against the plaintiffs, and to which, as the court finally
ruled after the defendant's evidence was closed, the plaintiffs
had no opportunity to reply, and that therefore the trial was in
effect a mistrial; and no instructions were given to the jury to
disregard such evidence, and they were allowed to take it into
the jury room."

*J. M. Morton*, (*L. E. White* with him,) for the plaintiffs.

*S. M. Thomas*, for the defendant.

DEVENS, J. We are of opinion that the bill of exceptions is
properly before us. The court in which a cause is tried may
undoubtedly require a party who has filed exceptions, and a
motion for a new trial embracing the same questions of law, to
elect upon which he will proceed, and may properly refuse to
hear the motion unless the party consents to waive his excep-
tions. In view of the trouble and expense involved in a discus-
sion of the principles of law which have been passed upon in a
contested case, it would be highly proper that this requirement
should generally be made. *Sylvester* v. *Mayo*, 1 Cush. 308. *Lee*
v. *Tinges*, 7 Md. 215. *West* v. *Cunningham*, 9 Porter, (Ala.) 104,
110. While the fact that a party proceeds to argument on such
a motion may also sometimes be treated as a waiver of his ex-
ceptions, even where no express assent 'that this shall be so is
given, the effect which shall be attributed to such an act must
be largely within the discretion of the presiding judge. If it is
possible for us to revise such an act as the allowance of the ex-
ceptions, the case at bar presents no reason for such a revision.
The hearing upon the motion took place, at the suggestion of
the judge, after the exceptions were filed; and although he
refused the motion, it was competent for him to hold that,

under these circumstances, the excepting party had not by participating in the argument upon it consented to any waiver of the exceptions.

The defendant had set up an eviction from part of the premises leased to him as a defence to the action. Without finally ruling upon the question whether such fact, if proved, would constitute a defence, the presiding judge received evidence upon this subject, against the objection of the plaintiffs. At a later stage of the trial, after the defendant's testimony was substantially in upon this point, he ruled that such eviction would not constitute a defence; and further, that, as the defendant admitted that if eviction was not a defence he was liable to pay to the plaintiffs at the rate of ten per cent per annum on repairs to the amount of $4,000, and as the plaintiffs contended that the defendant was liable in addition for a similar percentage on a plumbing bill of $2,500, the only question to be submitted to the jury was that of amount, and that the verdict would be for the plaintiffs, either for the percentage on $4,000 or $6,500. What was the amount of these percentages, respectively, had been agreed by the parties. No objection was made to this proceeding by the plaintiffs' counsel, nor did they offer any evidence in rebuttal of the defendant's testimony on the subject of the damage occasioned by the alleged eviction from part of the premises. At the argument, no comment was made by the defendant's counsel on the question of eviction, except to state that the question itself, and all evidence pertaining to it, had been ruled out by the court. He contended only that the defendant was not liable for the percentage on the plumbing bill, as the plumbing had been put in at the expense of the plaintiffs, without any agreement on the part of the defendant.

In his charge to the jury, the presiding judge instructed the jury that the defence of eviction was not open to the defendant in this action, and added: "For the purposes of this case we may lay out of the case entirely some of the questions on which evidence has been introduced to you, namely, the question whether this land passed to the defendant," it having been a question whether any land in addition to the hotel building passed to the defendant, "and also the question whether he has been evicted from a portion of that land." He further

submitted the case to the jury solely upon the question whether the plumbing repairs had been made under any agreement, express or implied, with the defendant. By the terms of the lease, the lessors were to make such repairs as the lessee should " agree to with them," the lessee paying at the rate of ten per cent per annum on the cost thereof. The jury returned a verdict for the smaller sum claimed, thus holding that the defendant was not responsible for the percentage on the plumbing repairs.

While the evidence on the subject of eviction was irrelevant to the issue finally tried, it is the contention of the plaintiffs that it was calculated to prejudice the plaintiffs with the jury, and to prevent their rendering an unbiased judgment. That there is a class of cases where evidence has been admitted upon the issue actually tried, which was irrelevant and yet which was so connected with it and of such a character as to produce an injurious effect, in which it has been held that a new trial should be granted on that account, may be conceded. Such are the cases cited by the plaintiffs. *Ellis* v. *Short*, 21 Pick. 142. *Brown* v. *Cummings*, 7 Allen, 507. *Crowell* v. *Porter*, 106 Mass. 80. *Maguire* v. *Middlesex Railroad*, 115 Mass. 239. But the alleged eviction of the defendant had nothing to do with the issue actually tried, nor is there any reason to suppose, from the bill of exceptions, that any evidence which had been given in relation thereto was allowed to have, or could have had, in the minds of the jury, any connection with the disputed question whether the defendant had or had not agreed to the plumbing repairs. The plaintiffs do not contend that it did have any such connection, but only that a prejudice was created against them as to a matter not in issue, by which they were affected as to the matter in issue.

If a plaintiff sought to recover on two distinct causes, which might properly be united in the same declaration in different counts, and at any stage in the hearing the court should rule that he could not recover on the first count, and that it was to be laid entirely out of the case, the defendant could not object to his recovery upon the other because evidence had been admitted upon the first count which had no relevancy to the second. In a similar way, where a defendant has set up two distinct defences, the fact that evidence has been admitted upon

one defence which the court holds to be untenable, will not necessarily deprive the party of the right to maintain the other because evidence irrelevant thereto was admitted in connection with the first defence. When for any reason it might be supposed that evidence given as to two counts in a declaration, or two defences set up in an answer, might be confounded, where one had been withdrawn from the consideration of the jury, it would be proper to ask the court to distinguish such parts of the evidence.

But when, in the case at bar, the plaintiffs did not do this, and when the question finally tried had no relation, so far as the exceptions show, to that on which evidence had originally been admitted, the withdrawal of the latter from the jury could, we think, have no tendency to prejudice the plaintiffs. Indeed, the fact that the defendant in the matter of the eviction had sought to maintain a defence not tenable, and that the court had finally assented to the position of the plaintiffs, would seem clearly to have had an opposite tendency. This withdrawal was made by the court in clear terms, which necessarily implied that all the evidence which bore upon the question of eviction only was to be rejected. We must infer that the jury understood and followed the directions of the court. *Commonwealth* v. *Cunningham*, 104 Mass. 545.

The auditor's report went to the jury with the other papers in the case. In the earlier part of the trial the plaintiffs had moved that so much of the auditor's report as related to the construction of the lease and the evidence of eviction should be stricken therefrom, which motion the presiding judge declined to grant. After the final ruling by the judge in favor of the plaintiffs upon this point, this portion of the report became unimportant. Even if the whole report went to the jury, it must have been fully understood that this had no relation to the question which the jury were to decide. No objection was made at the time that the auditor's report went to the jury, nor was any special attention called to it. If the plaintiffs had deemed that any injury could be done to them on the issue actually tried, by anything contained in the report as to an entirely distinct matter, they should have objected to its going to the jury, or have called the attention of the court to it, so that an instruction

might have been given which would have guarded their rights. It cannot be doubted, in view of the only question finally submitted, that such an instruction would have been given if they had deemed it of sufficient importance to ask for it.

*Exceptions overruled.*