OMNI FLYING CLUB, INC. *vs.* CESSNA AIRCRAFT COMPANY.

Essex.    February 7, 1974. — August 8, 1974.

Present: TAURO, C.J., QUIRICO, BRAUCHER, HENNESSEY, & KAPLAN, JJ.

*Negligence,* Manufacturer, Airplane, Contractual limitation of liability. *Damages,* Airplane. *Practice, Civil,* New trial. *Limitations, Statute of.*

An action of tort based on the negligent sale to the plaintiff by the defendant of an airplane negligently manufactured and assembled by it, commenced more than two years after the manufacture and assembly but less than two years after the date of the sale, was not barred by the two-year statute of limitations. [158-159]

Language in the standard warranty provision in the owner's manual of an airplane, unsigned by the seller and purchaser of the airplane, was inadequate under G. L. c. 106, § 2-719, to limit the seller's liability to the purchaser for negligence. [159-160]

In an action for the negligent assembly by the defendant of an airplane manufactured by it and which it sold to the plaintiff, evidence with respect to acts occurring while the airplane was in the defendant's possession, reversal of a T-fitting supplying oil to the turbocharger and to the oil pressure gauge, and upside down installation of a fuel vent valve, resulting in damage to the plaintiff long after the defendant surrendered control of the airplane, warranted a verdict for the plaintiff without proof of lack of improper handling after such surrender. [160-161]

Expert testimony was properly admitted at the trial of an action for the negligent assembly of an airplane to show that it was possible for two turbochargers successively installed therein to fail after very different

periods of time but under identical conditions of oil star-vation. [161-162]

A flying club which purchased an airplane negligently assembled by the seller was entitled to damages for loss of its rental use while waiting for a new engine and while the airplane was at the seller's service facility. [162]

After a verdict for the plaintiff and an order by the trial judge on the defendant's motion for a new trial that unless the plaintiff agreed to a remittitur in a certain amount there should be a new trial on the issue of damages, and where the plaintiff would agree to the remittitur only if the defendant would forgo an appeal and the defendant refused to do so, it was error under G. L. c. 231, § 127, for the judge to revoke his order and to deny the defendant's motion, and the case must be remanded for further hearing on the motion, any new trial to be confined to damages. [162-164]

TORT. Writ in the Superior Court dated April 29, 1969.

The action was tried before *Linscott, J.*

*H. Erik Lund* for the defendant.

*Timothy J. O'Keefe* for the plaintiff.

HENNESSEY, J.   This case arises from the problems encountered by the plaintiff after its purchase of a used airplane manufactured by the defendant. The original declaration was in three counts, one of which was a count in negligence and the other two counts were for breach of warranty. At the conclusion of the evidence, the plaintiff waived the two counts in warranty and proceeded solely in negligence. The sole issues as to proof of liability submitted to the jury were whether the defendant assembled the airplane negligently and sent it out to the buying public without adequate inspection and, if so, whether this was the proximate cause of the damage sustained by the plaintiff.

The jury returned a verdict for the plaintiff for $19,500. Thereafter, on the defendant's motion for a new trial, the judge found that the verdict was excessive on the facts developed on damages and on October 11, 1972, ordered a new trial on the issue of damages unless the plaintiff should agree to a remittitur of $5,178. On the plaintiff's motion for rehearing, the judge requested the defendant's counsel to ascertain whether the defendant would pay the judgment

modified by the amount of the remittitur. After being advised that the defendant would not pay the modified judgment and that it intended to prepare a bill of exceptions, the judge, on November 9, 1972, entered an order striking his prior order and entered instead an order denying the defendant's motion for a new trial.

The case is before this court on the exceptions of the defendant to the denial of its motion for a directed verdict, to the denial of certain of its requests for instructions, to the striking of the judge's original order on the motion for a new trial and the entry of an order denying that motion, and to rulings on the admission and exclusion of evidence.

The facts are as follows. In May, 1967, the plaintiff purchased from the defendant, through a dealer, a turbocharged airplane which had been used as a demonstrator by the defendant's east coast zone office, and which had 150 hours flying time when the plaintiff took possession. The purchase and sale agreement governing this transaction was received in evidence. The plaintiff's president testified that a representative of the defendant undertook to obtain for the plaintiff's benefit the remaining original warranty on the aircraft. It was his belief that this was done and that a Cessna service policy was delivered to evidence the fact that the plaintiff would have the benefit of that warranty.

That warranty does not appear in either the purchase and sale agreement or the service policy, but is printed in the back of the owner's manual. The record is unclear as to when the plaintiff received a copy of this manual but its president did have one at the time of trial. The warranty provides that the defendant's only obligation is to replace parts it finds to be defective after they are received, transportation charges prepaid, at its place of business in Kansas. A disclaimer then recites: "The provisions of this warranty shall not apply to any aircraft, equipment or accessories which have been subject to misuse, negligence or accident, or which shall have been repaired or altered outside of Cessna's factory in any way so as in the judgment of Cessna to affect adversely its performance, stability or reliability. This warranty is expressly in lieu of any other

warranties, expressed or implied, including any implied warranty of merchantability or fitness for a particular purpose, and of any other obligation or liability on the part of Cessna of any nature whatsoever and Cessna neither assumes nor authorizes anyone to assume for it any other obligation or liability in connection with such aircraft, equipment and accessories."

The original turbocharger was replaced after some 580 hours of flying time, about one year subsequent to the purchase. The second turbocharger "seized up" and failed after only about thirty additional hours of operation. The parties agree that the second turbocharger failed due to a lack of lubrication caused by the reversal of a T-fitting through which oil is supplied under pressure on the one hand to the turbocharger, and on the other to the oil pressure gauge on the instrument panel. The hose to the gauge contains a mechanical restrictor which severely limits the flow of oil; the other hose, of the same outside dimension, is not blocked. Reversal of the T-fitting would thus cause the turbocharger to receive an inadequate supply of oil. The plaintiff contends that the T-fitting was reversed at the time it received the plane from the defendant and that this was the cause of the early failure of the first turbocharger. There was no direct evidence indicating when or by whom the T-fitting was reversed. The circumstantial evidence offered by each side was conflicting.

After the failure of the second turbocharger the defendant's service representative advised the plaintiff that the engine was still airworthy. Based on tests conducted by a mechanic in its employ the plaintiff decided not to accept it and instead purchased and installed a new engine. The engine was replaced at 610 hours although its expected life was about 1,400 hours flying time.

The plaintiff also alleged negligent assembly in that a fuel vent valve in the wing assembly of the airplane was discovered, in November of 1968, to have been installed upside down. There was testimony that a Cessna service man had indicated that this defect was related to the numerous momentary engine failures in flight which the

plaintiff had experienced. Two expert witnesses testified to similar conclusions. The plaintiff's president testified that when the fuel vent valves had been correctly positioned, "[o]nly once after that did he have any significant problems with the airplane."

On the issue of damages, the plaintiff's president testified that the airplane was worth $10,000 less than what was paid for it. No objection was made to this testimony. There was testimony that the replacement cost of the engine and turbocharger was $8,640. Damages were also claimed for a thirty-four day period in May and June, 1968, while the plaintiff was awaiting the new engine, and a twenty-seven day period in November and December, 1968, while the airplane was at the defendant's service facility in Kansas.


## STATUTE OF LIMITATIONS.

The defendant's initial argument is that its motion for a directed verdict should have been allowed as the two-year statute of limitations provided by G. L. c. 260, § 2A, had run.[1] At issue is the time from which the statutory period is to be measured. The defendant urges that it was entitled to a directed verdict because the relevant date is that of manufacture, when the act of negligence is alleged to have occurred. We reject this argument, which ignores the fact that the cause of action as stated in the declaration could fairly be construed as one not merely for negligent manufacture, but for the negligent sale of a negligently assembled airplane. The evidence warranted a finding of the defendant's negligence at the time of the sale and the jury were charged according to that theory, inter alia. As the action here was filed less than two years after the date of the sale, the defendant was not entitled to a directed verdict. See, generally, Frumer and Friedman, Products Liability § 39.01 (2) (1973), for a discussion of the date on which the statute begins to run in product liability cases. Although

---

[1] Effective January 1, 1974, the limitation of c. 260, § 2A, is three years.

the above discussion is dispositive of this issue, we add that the defendant cites no cases which hold that the date of manufacture is significant. While it may be harsh to say that a prospective plaintiff may be foreclosed from bringing a cause of action before his injury or damage is discovered, compare *Capucci* v. *Barone,* 266 Mass. 578, 581 (1929), with *Pasquale* v. *Chandler,* 350 Mass. 450, 455 (1966), *Hendrickson* v. *Sears,* 365 Mass. 83 (1974), and *White's Farm Dairy, Inc.* v. *De Laval Separator Co.* 433 F. 2d 63 (1st Cir. 1970), it is nothing short of absurd to say he may be so foreclosed before he has any contact with a negligent seller.

## WARRANTY LIMITATION OF REMEDIES.

The defendant next argues that a verdict should have been directed as the warranty it provided the plaintiff disclaimed any obligation other than the replacement of defective parts within a period of six months. The argument is that the language of the warranty served as a contractual limitation of the defendant's liability even in a negligence action. The adequacy of this disclaimer to exclude liability is in part determined by G. L. c. 106, § 2-719. This section allows "contractual . . . limitation of remedy" in "the agreement" so long as it is not "unconscionable" and specifies that "limitation of damages where the loss is commercial is not [unconscionable]." The form of agreement signed by the parties to this case, which was apparently provided by the bank which financed the transaction, does not purport to limit the plaintiff's remedies.[2]

The language relied on by the defendant to limit its liability appears in its own standard warranty provision which was not signed by either party, appearing on an unnumbered page after the index in the defendant's own-

---

[2] While it does purport to exclude any implied warranties, it was no doubt ineffective to do so as the language of disclaimer was not "conspicuous" as required by G. L. c. 106, § 2-316. In any event the plaintiff here proceeded only on a theory of negligence against the defendant.

er's manual, and which the plaintiff may or may not have had a copy of at the time the agreement was signed. We hold that this language is not effective to limit the defendant's liability for negligence.

## SUFFICIENCY OF EVIDENCE.

The plaintiff alleged negligence on the part of the defendant in two regards, improper installation of the T-fitting and improper installation of the vent valve. The defendant argues that its motion for a directed verdict should have been allowed as there was insufficient evidence to charge it with either negligent act. We disagree. While there was no direct evidence of the defendant's negligence, the circumstantial evidence was sufficient to survive a motion for a directed verdict. Considered most favorably to the plaintiff, that evidence included testimony that the oil pressure gauge behaved unusually from prior to the time the plaintiff took possession of the airplane, that it operated properly once the reversed T-fitting was corrected, and that the airplane's log showed no work had been done on the fitting, and expert opinion that the reversed T-fitting would cause the observed malfunctioning of the gauge. The defendant relies on contrary circumstantial evidence, including evidence that tended to indicate that the reversal, which unquestionably destroyed the second turbocharger, was not responsible for the premature failure of the first and thus must have occurred at a time when the defendant had no control over the airplane. We need not consider that evidence here. It was the function of the jury to resolve conflicts in the evidence. The evidence on the fuel vent valve was similarly circumstantial and conflicting.

The defendant also argues that the plaintiff failed to meet the burden of proving "that the instrumentality had not been improperly handled by himself or by intermediate handlers." The defendant relies on the case of *Evangelio* v. *Metropolitan Bottling Co. Inc.* 339 Mass. 177, 183 (1959).

There was no such burden on the plaintiff here. While the damage for which the plaintiff seeks recovery occurred long after the defendant surrendered control over the airplane, there was indirect evidence, referred to above, that the improper installation which caused the damage had occurred prior to that time. In the particular circumstances of the *Evangelio* case (exploding bottle) and a few others (see *LeBlanc* v. *Ford Motor Co.* 346 Mass. 225 [1963], which concerned a defective automobile transmission), we have held that an inference of the defendant's negligence was warranted even without specific proof of the nature of the defect or the negligence. In such cases proof that the product had not been improperly handled after it left the control of the defendant is part of the plaintiff's burden. Here, the cause was shown, and with circumstantial evidence to show when it occurred there was no need to offer the testimony of intermediate handlers. See *Carney* v. *Bereault,* 348 Mass. 502, 506 (1965).

The defendant further alleges that the plaintiff failed to explain satisfactorily how the first turbocharger could have lasted 580 hours under conditions which caused the second to fail in only thirty hours. Again, we disagree. There was expert testimony that two turbochargers machined to slightly different sizes within normal tolerances, which were then subjected to different work loads, could fail after very different periods of time under identical conditions of oil starvation. The defendant argues that this testimony was speculative and was entitled to no evidentiary weight, citing *Ruschetti's Case,* 299 Mass. 426, 431-432 (1938), and *Callaghan* v. *R. H. White Co.* 303 Mass. 413, 416 (1939). The circumstances of these cases differ from the instant case, however. In the *Callaghan* and *Ruschetti* cases we rejected expert speculation offered to prove that something had occurred. Here, there was other evidence offered by the plaintiff to prove that the T-fitting had been reversed while in the defendant's possession. The defendant challenged whether that was possible, given the different failure rates of the two turbochargers. The expert opinion merely established that it was possible. With the additional evidence it

was then permissible for the jury to conclude that what the experts considered possible had in fact occurred.

## LOSS OF USE.

The defendant objected and excepted to the admission of evidence of the reasonable rental value of the airplane during the period it was lost to the plaintiff's use on the theory that there may be no recovery for such loss of use. We disagree. We held similar damages recoverable in the case of *Antokol* v. *Barber,* 248 Mass. 393, 396-397 (1924), and stated that "[t]he loss of use of the automobile during the period of repair is as much the natural and necessary consequence of the tortious act of the defendant described in the declaration as is the cost of the repair. It is as plainly so as is the loss of time of an individual arising from personal injuries, or the loss of use of any chattel arising from wrongful act." While that case dealt with the loss of use of an automobile, its language and holding are equally apposite in the case of an airplane.

What we have said here concerning loss of use also disposes of the defendant's exception to the refusal of the judge to give an instruction to the jury concerning loss of use which was substantially inconsistent with our holding above.

## ADMISSIBILITY OF EVIDENCE.

We have reviewed the defendant's several exceptions to the admission of certain evidence, particularly in the testimony of the plaintiff's experts, and we find no error.

## MOTION FOR NEW TRIAL ON DAMAGES ISSUE.

After a hearing on the defendant's motion for a new trial the judge found expressly that the jury had been allowed to

consider an erroneous measure of damages and that the verdict was excessive. In the proper exercise of his discretion he then entered an order that unless the plaintiff agreed to remit a portion of the jury verdict a new trial would be held on the issue of damages. G. L. c. 231, § 127.[3] *Raunela* v. *Hertz Corp.* 361 Mass. 341, 346 (1972). At a subsequent hearing it then developed that the plaintiff would agree to the remittitur only if the defendant would forgo an appeal and that the defendant was determined to press its appeal on the liability issues regardless of the amount of the verdict. The judge then revoked his earlier order and entered an order denying the motion for a new trial. He did this on the ground that "[a]s long as Defendant is having an appellate review of the matters which it saved by exceptions, it seems to me the question of whether there was error concerning damages should be among them."

This second order was, in effect, a ruling of law that where a trial judge determines that a plaintiff's verdict is excessive and that the defendant is entitled to a new trial on the question of damages, he should nevertheless deny the motion for a new trial if the defendant proposes to perfect his appeal anyway. From one standpoint, considering that the judge had decided that there had been errors of law in his rulings on damages, his order made eminent good sense. Nevertheless, it was error. General Laws c. 231, § 127, does not contemplate that a verdict which the trial judge has found to be excessive shall nevertheless be allowed to stand merely because the defendant intends to perfect an appeal. A trial judge may refuse to hear a motion for a new trial unless the defendant waives exceptions which raise the

---

[3] The relevant statute reads as follows: "The court may, at any time before judgment, set aside the verdict in a civil action and order a new trial for any cause for which a new trial may by law be granted; but a verdict shall not be set aside except on written motion by a party to the cause, stating the reasons relied upon in its support, filed and heard after notice to the adverse party according to the rules of the court. A verdict shall not be set aside as excessive until the prevailing party has first been given an opportunity to remit so much thereof as the court adjudges is excessive. A verdict shall not be set aside solely on the ground that the damages are inadequate until the defendant has first been given an opportunity to accept an addition to the verdict of such amount as the court adjudges reasonable."

same questions of law. *Anthony* v. *Travis,* 148 Mass. 53, 57 (1888). *Wheeler* v. *Klaholt,* 178 Mass. 141, 143 (1901). See *Weil* v. *Boston Elev. Ry.* 218 Mass. 397, 404 (1914). The judge may grant a rehearing of a motion for a new trial solely on "more mature reflection," *Waucantuck Mills* v. *Magee Carpet Co.* 225 Mass. 31, 33 (1916). However, once the judge has exercised his discretion and ruled in an order that a verdict was excessive, he may not strike his order solely because the defendant has indicated an intention to perfect a bill of exceptions. This is true even though, as in the instant case, there is no suggestion that the judge intended thereby to force the defendant to waive any rights.

Accordingly, the case must be remanded to the Superior Court for reconsideration and disposition of the defendant's motion for a new trial. In view of the prior circumstances, including the precise nature of the judge's original ruling on the motion for a new trial, any order for a new trial should be confined to the issue of damages.

## CONCLUSION.

We have disposed of all exceptions related to the issue of the defendant's liability, and found no error. The case will be ripe for entry of judgment for the plaintiff after final resolution of the rights of the parties relative to a new trial, subject to the appellate rights of the parties. See *Bartley* v. *Phillips,* 317 Mass. 35, 40-43 (1944).

The order of November 9, 1972, striking the order of October 11 and denying the motion for a new trial, must be vacated. That motion is to stand in the Superior Court for further hearing. In all other respects the defendant's exceptions are overruled.

*So ordered.*