Gants, J.
In January 1991, the plaintiff, Northridge Homes, Inc. (“Northridge”), retained the architectural firm of John W. French & Associates, Inc. (“JWFA”) to provide design and contract administration services for the renovation of its residential townhouse complex in Beverly, Massachusetts. After severe leaks were found in the roofs at the townhouse complex, North-ridge filed this action alleging that the roof leaks were caused by the negligent architectural and engineering services provided by the defendant JWFA and its employee, defendant Thomas Driscoll (“Driscoll”).[1] Northridge also alleges that JWFA, through its officer, Linda Neshamkin, made knowing or reckless misrepresentations to Northridge that the leaks were not caused by any significant structural problem in order to deceive Northridge into not filing a negligence action. Northridge contends that these misrepresentations constituted unfair and deceptive conduct in violation of G.L.c. 93A.[2] JWFA and Driscoll now move for summary judgment on the grounds that Northridge’s claims are barred by the limitations period set forth in the contract between Northridge and JWFA. After hearing and for the reasons stated below, JWFA and Driscoll’s motion for summary judgment is DENIED.
BACKGROUND
In evaluating a motion for summary judgment, I must rely on facts not in dispute as well as disputed facts viewed in the light most favorable to the nonmoving party. Beal v. Board of Selectmen of Hingham, 419 Mass. 535, 539 (1995). Consequently, the facts stated below are presented in the light most favorable to the plaintiff and should not be misunderstood as findings of the court.
*691 In January 1991, when Northridge contracted with JWFA to provide architectural and contract administration services for the renovation of Northridge’s townhouse complex in Beverly, Northridge and JWFA executed a Standard Form of Agreement between Owner and Architect for Designated Services (“the Agreement”). The Agreement provides, in a number of provisions, that JWFA was to determine the Date of Substantial Completion of the contracted work.[3] This Agreement also included a provision limiting the time within which either party can bring a claim against the other:
As between the parties to this Agreement: as to all acts or failures to act by either party to this Agreement, any applicable statute of limitations shall commence to run and any alleged cause of action shall be deemed to have accrued in any and all events not later than the relevant Date of Substantial Completion of the Work, and as to any acts or failures to act occurring after the Relevant Date of Substantial Completion, not later than the date of the issuance of the final Certificate for Payment.
Agreement, §11.3.
JWFA’s Associate Vice-President, Linda Neshamkm (“Neshamkm”), was the architect in charge of the Northridge project (“the Project”), but most of the work was performed by Driscoll, who prepared designs and specifications and performed construction administration for the Project. On February 16, 1993, at a conference attended by four representatives of North-ridge, Driscoll presented the Certificate of Substantial Completion for signature. The next day, Driscoll certified the Date of Substantial Completion of the Project to be February 17, 1993. The Certificate of Substantial Completion was signed by Driscoll on behalf of JWFA and by Joseph Norte on behalf of the contractor, Mello Construction. Northridge never signed the Certificate.
After the Date of Substantial Completion, in the spring of 1993, Driscoll approved a project change order which eliminated the original design specification of adding vapor barriers to the attics of the Project even though an attic without vapor barriers requires twice as much ventilation. Driscoll also approved the addition of a perforated metal mesh material to the eaves’ vents of the Project buildings.
Northridge contends that the cumulative effects of these actions by Driscoll, combined with deficiencies in the original design, left its buildings with attics that did not meet the requirements of the Massachusetts Building Code (“the Code”). Driscoll has acknowledged that a Massachusetts architect is responsible for ensuring that a building, as designed and constructed, complies with the Code and that he and JWFA were obligated to advise Northridge of any conditions which did not comply with the Code.
In January 1994, Driscoll visited Northridge to provide architectural advice concerning the cause of and possible solutions to the ice damming and roof leaking Northridge was experiencing at the Project. Part of Driscoll’s visit was to determine if there were any design deficiencies that were causing these particular problems. Driscoll advised Northridge that these problems were caused by the unusually severe winter weather. Driscoll did not advise Northridge of any design deficiencies.
The ice damming and roof leaking problems resumed during the winter of 1995. Consequently, in the spring of 1996, Neshamkin met with Northridge regarding its concern that the roof leaks might be caused by inadequate attic ventilation. At this meeting, Neshamkin told Northridge that the design of the attics did comply with the Code.[4] Neshamkm, however, made this representation without the benefit of any airflow calculations on the attics’ actual ventilation.
JWFA never issued a final Certificate for Payment on this Project. Northridge commenced suit on April 30, 1997.
DISCUSSION
To prevail on summary judgment, the moving party must establish that there is no genuine issue of material fact on every element of a claim and that it is entitled to judgment on that claim as a matter of law. See generally Mass.R.Civ.P. 56(c): Highland Ins. Co. v. Aerovox, Inc., 424 Mass. 226, 232 (1997). Where, as here, the party opposing summary judgment has the burden of proof at trial, the moving party is entitled to summary judgment if it “demonstrates, by reference to the materials described in Mass.R.Civ.P. 56(c), unmet by countervailing materials, that the party opposing the motion has no reasonable expectation of proving an essential element of that party’s case.” Kourouvacilis v. General Motors Corp., 410 Mass. 706, 716 (1991). “To be successful the moving party need not submit affirmative evidence to negate one or more elements of the other party’s claim.” Id. It is sufficient to demonstrate that “proof of that element is unlikely to be forthcoming at trial.” Flesner v. Technical Communications Corp., 410 Mass. 805, 809 (1991).
1. Northridge’s Chapter 93A Claim
JWFA and Driscoll contend that summary judgment is required as to all claims because Section 11.3 of the Agreement provides that any allegation of professional malpractice shall be deemed to have accrued “not later than the relevant Date of Substantial Completion of the Work,” which here was February 17, 1993, and the case was not filed until April 30, 1997, more than three years later. However, JWFA never specifically addresses why this limitations argument applies to Northridge’s c. 93A claim, which is focused on alleged misrepresentations as to the cause of the roof leaks and ice dams. Section 11.3 does not apply to these alleged misrepresentations because they occurred after the Date of Substantial Completion and the final Certificate for Payment was never issued. As *692 alleged, the misrepresentations sill occurred after April 30, 1993, within the four-year limitations period provided for c. 93A claims. See G.L.c. 260, §5A.
While JWFA denies that any misrepresentations were made, there is a genuine issue of material fact as to whether JWFA, through its officers and employees, knowingly or recklessly make false representations to Northridge about the cause and origin of the roof leaks and ice dams in order to conceal JWFA’s responsibility for design defects. JWFA, therefore, cannot prevail on summary judgment as to the c. 93A claim.
2. Northridge’s Professional Malpractice Claims
Northridge’s professional malpractice claims must be divided into two time periods: (1) allegations of negligence before the February 17, 1993 Date of Substantial Completion of the Work, and (2) allegations of negligence after this date in eliminating the proposed vapor barriers in the attics and installing the perforated mesh to the eaves’ vents of the buildings.
With respect to the former, the defendants contend that these pre-February 17, 1993 allegations are barred by the three-year limitations period for tort actions arising out of any alleged deficiency in the design of improvements to real property. See G.L.c. 260, §2B. They contend that Section 11.3 of the Agreement provides that any cause of action arising from any act or failure to act before that date is deemed to have accrued for purposes of the statute of limitations no later than the Date of Substantial Completion, so time ran out on these allegations on February 17, 1996, long before suit was filed in this action.
Northridge attacks this argument on two fronts. First, it contends that the Date of Substantial Completion has yet to become effective because it never signed the Certificate of Substantial Completion. Second, it argues that Massachusetts law does not permit the parties to an agreement to alter the statute of limitations for tort actions that may arise among the parties. Northridge’s attacks fail on both fronts.
As to the first line of attack, the Agreement sets the accrual date for tort actions as the Date of Substantial Completion, not the date of execution of the Certificate of Substantial Completion. The Architect under the Agreement has the responsibility of determining the Date of Substantial Completion. If that determination were not final until the Owner signed off on it, the Agreement would have provided for a shared responsibility in setting this Date.
Moreover, the signatures of the Owner and Contractor on the Certificate of Substantial Completion are not necessary to certify the Date of Substantial Completion. Rather, they reflect the acceptance by the Owner and the Contractor of the future responsibilities set forth in that Certificate. The Agreement declares that terms in the Agreement shall have the same meaning as those in AIA Document A201, General Conditions of the Contract for Construction (“General Conditions”). Agreement at §11.1. Section 9.8 of the General Conditions, which describes the Certificate of Substantial Completion, makes it clear that:
[w]hen the Work or designated portion thereof is substantially complete, the Architect will prepare a Certificate of Substantial Completion which shall establish the date of Substantial Completion, shall establish responsibilities of the Owner and Contractor for security, maintenance, heat, utilities, damage to the Work and insurance, and shall fix the time within which the Contractor shall finish all items on the list accompanying the Certificate. Warranties required by the Contract Documents shall commence on the date of Substantial Completion of the Work or designated portion thereof unless otherwise provided in the Certificate of Substantial Completion. The Certifícate of Substantial Completion shall be submitted to the Owner and Contractor for their written acceptance of responsibilities assigned to them in such Certificate.
By failing to sign the Certificate, the Owner does not negate the date of Substantial Completion. At most, a failure to sign reflects the Owner’s refusal to accept the responsibilities assigned to it under the Certificate.
As to the second line of attack, where the parties to an agreement, as here, are sophisticated business entities engaged in a negotiated arms length transaction, Massachusetts courts have recognized the right of parties to enforce contractual provisions which limit liability. See Canal v. Westinghouse Electric Corp., 406 Mass. 369, 374-75 (1990) (enforcing a provision excluding consequential damages); Deerskin Trading Post, Inc. v. Spencer Press, Inc., 398 Mass. 118, 123-24 (1986) (upholding a limitation of damages provision contained in a final price quotation). Under these circumstances, consensual allocation of risk is not contrary to Massachusetts public policy. Minassian v. Ogden Suffolk Downs, Inc., 400 Mass. 490, 493 (1987). Indeed, since the Massachusetts Supreme Judicial Court has enforced contractual provisions completely releasing a defendant from all liability, it is not apparent why a contractual provision that simply limits and defines the accrual date for statute of limitations purposes should not be enforceable. See Cormier v. Central Mass. Chapter of the Nat’l Safety Council, 416 Mass. 286, 287-89 (1993) (“[t]here is no rule of general application that a person cannot contract for exemption from liability for his own negligence and that of his agents and servants”).
This accrual date provision should not be deemed void as against public policy, especially when agreed to by sophisticated parties of roughly equal bargaining power, as found here. Since the statute of limitations can be extended through application of the discovery rule, this provision provides both parties with the certainty of knowing the true deadline for bringing suit based on conduct that pre-dates the Date of Substan *693 tial Completion. Under the circumstances found in this case, there is no sound reason to bar parties from agreeing to such a limitation. That is why it is not surprising that this contractual accrual date provision, which is part of the Standard Form of Agreement Between Owner and Architect used throughout the nation, has been found enforceable in every reported decision by every court that has considered this argument. Harbor Court Associates v. Leo A. Daly Co., 179 F.3d 147, 151 (4th Cir. 1999), and cases cited. See also Seal Harbor III Condominium Trust v. Add Inc., Civil No. 93-4535 (Suffolk Super. Ct. November 19, 1997).
Northridge cites two cases in support of its contention that liability limitation provisions are not enforceable in tort actions: Omni Flying Club Inc. v. Cessna Aircraft Co., 366 Mass. 154 (1977), and Standard Register Co. v. Bolton Emerson, Inc., 38 Mass.App.Ct. 545 (1995). Both cases are distinguishable from the present action. In Omni Flying Club Inc., the Supreme Judicial Court refused to enforce a provision limiting liability when that provision, found in the defendant’s own standard warranty, was not signed by either party and appeared on an unnumbered page after the index in the defendant’s owner’s manual. 366 Mass. at 159-60. Indeed, the plaintiff may not even have had a copy of the owner’s manual containing this provision at the time the agreement was signed. Id. In Standard Register, the Appeals Court held that a contractual limitation of liability barring incidental or consequential damages was ineffective to bar a claim under c. 93A based on intentional misrepresentations. 38 Mass.App.Ct. at 548-50. The court limited its holding to c. 93A claims and did not address either the validity of liability limitation provisions in common law tort actions, such as the negligence claim at issue here, or the validity of accrual date provisions.
Consequently, this Court finds that the accrual date for all claims based on the defendants’ action or inaction prior to February 17, 1993 may not be later than February 17, 1993. As a result, these claims are time-barred unless the defendants equitably should be estopped from invoking this defense because of misrepresentations by the defendants prior to February 17, 1996 that caused the plaintiff to defer filing its lawsuit. This Court denies summary judgment on the pre-February 17, 1993 negligence allegations only because it finds that there is a genuine issue of material fact as to whether the elements of equitable estoppel have been satisfied.
Equitable estoppel is a doctrine created by the courts to prevent results contrary to good conscience and fair dealing. Mackeen v. Kasinkas, 333 Mass. 695, 698 (1956). Stated simply, it means that the law will not permit a party to be better off by acting badly. See Harrington v. Fall River Housing Auth., 27 Mass.App.Ct. 301, 307 (1989) (stating that “(e]stoppel is an equitable doctrine created to prevent one from benefitting from his own wrongdoing and to avoid injustice”). Equitable estoppel is appropriate when (1) a party makes a false representation; (2) the party intends the other party to rely on that false representation; and (3) the other party does rely on that false representation to its detriment. See Turnpike Motors, Inc. v. Newbury Group, Inc., 413 Mass. 119, 123 (1992); Tardanico v. Aetna Life & Casualty Company, 41 Mass.App.Ct. 443, 446 (1996).
A fact finder could reasonably determine that the essential elements giving rise to an equitable estoppel are present in this case. As discussed above with regards to Northridge’s c. 93A claim, JWFA and Driscoll have failed to establish the absence of a genuine issue of material fact as to whether, after the Date of Substantial Completion, Driscoll and Nesham-kin made false representations to Northridge that the cause of the ice damming and roof leaks was severe weather and not design deficiencies, and that the attics as designed complied with the Code. Consequently, a fact finder could reasonably conclude that these representations were false and were intended to induce Northridge to refrain from bringing suit against JWFA within the restricted statute of limitations period, and that they succeeded in causing Northridge to delay filing this action to its detriment.
Therefore, the plaintiff may proceed with its negligence claim against the defendants based on pre-Feb-ruary 17, 1993 conduct, but only if it succeeds in persuading the fact finder that the defendants engaged in conduct prior to February 17, 1996 that merits equitable estoppel. As noted above, Northridge also asserts a claim for negligence based on acts after the Date of Substantial Completion in eliminating the planned vapor barriers and installing the perforated mesh material to the eaves’ vents. Section 11.3 of the Agreement, by its express terms, does not apply to this post-February 17, 1993 conduct. However, unless equitable estoppel is found, the three-year statute of limitations will still bar a negligence claim based on allegations that pre-date April 30, 1994. See White v. Peabody Construction Co., Inc., 386 Mass. 121 (1982). Consequently, the plaintiff may proceed with its negligence claim against the defendants based on conduct between February 17, 1993 and April 30, 1994 only if it can establish the elements of equitable estoppel before the three-year limitations period expired. To the extent the negligence claim is based on conduct that post-dates April 30, 1994, these allegations are not barred by the three-year statute of limitations period and do not require a finding of equitable estoppel to survive.
It should be noted that, by applying the principle of equitable estoppel, this Court will permit the plaintiff to present its case through the “front door” of a negligence claim rather than solely through the “back door” of a c. 93A claim. If equitable estoppel were not available, the plaintiff could still bring its c. 93A claim alleging that JWFA made knowing and reckless mis *694 representations designed to lull Northridge into forgoing or postponing a law suit against it, and could claim as damages the amount it would have obtained through a judgment if that action had timely been brought. The negligence claim would still need to be tried in order to determine the amount, if any, of the damages resulting from the c. 93A claim. This summary judgment decision seeks to harmonize these two claims, permitting the negligence claim to be pressed if equitable estoppel can be shown and the c. 93A claim to be separately pressed in the event the conduct alleged to warrant estoppel is also found to be unfair and deceptive.
ORDER
For the reasons stated above, JWFA and Driscoll’s motion for summary judgment is DENIED. The plaintiff may proceed with its negligence claim against the defendants based on pre-February 17, 1993 conduct, but only if it succeeds in persuading the fact finder that the defendants engaged in conduct prior to February 17, 1996 that merits equitable estoppel. The plaintiff may proceed with its negligence claim against the defendants based on conduct between February 17, 1993 and April 30, 1994 only if it can establish the elements of equitable estoppel before the three-year limitations period expired. To the extent the negligence claim is based on conduct that post-dates April 30, 1994, these allegations are not barred by the three-year statute of limitations period and do not require a finding of equitable estoppel to survive.

 Driscoll performed architectural work for Northridge as an employee of JWFA but was not certified as an architect until April 9, 1993.

 The defendant Driscoll is not alleged to have committed a violation of G.L.c. 93A.

 Section 1.2.9 of the Agreement provides that “[t]he Architect shall be the interpreter of the requirements of the Contract Documents and the judge of the performance thereunder by both the Owner and the Contractor...” Section 1.2.15 of the Agreement states that ”[t]he Architect shall conduct inspections to determine the Dates of Substantial Completion and final completion ..." Attachment 1 of the Agreement specifically declares that one of the architect’s designated services is to “determine substantial completion and prepare final certificate for payment.”

 In her deposition, Neshamkin, in response to a question as to whether she told Northridge that the attic design complied with the Massachusetts Building Code, stated that she believed she had. Neshamkin later stated she could not recall what she said to Northridge on this issue. Since this Court must view the evidence on summary judgment in the light most favorable to the plaintiff, this Court must accept that Neshamkin did inform Northridge that the attic design complied with the Code.