ALBUM GRAPHICS, INC., Plaintiff-Appellant, *v.* BEATRICE FOODS CO., d/b/a Craig Chemical and Adhesive Co., Defendant-Appellee.

First District (4th Division)   No. 79-1183

Opinion filed July 31, 1980.

Pedersen & Houpt, of Chicago (Jonathan B. Gilbert and Marilee Roberg, of counsel), for appellant.

Hinshaw, Culbertson, Moelmann, Hoban & Fuller, of Chicago (D. Kendall Griffith and Dan L. Boho, of counsel), for appellee.

Mr. PRESIDING JUSTICE LINN delivered the opinion of the court:

Plaintiff, Album Graphics, Inc., brought this action in the circuit court of Cook County against defendant, Beatrice Foods Co., doing business as Craig Chemical and Adhesive Co., seeking damages based on four separate counts set out in the complaint. Count I alleged breach of an express warranty in a contract for the sale of goods. Count II alleged breach of an implied warranty of fitness for a particular purpose. Count III was based on negligence and count IV on fraud.

The trial court dismissed counts I and II as being barred by written disclaimers of the two warranties and dismissed count III as failing to state a cause of action in negligence. The three counts were dismissed with prejudice and the trial court found there was no just reason for delaying enforcement or appeal of its order. Accordingly, plaintiff brought this appeal pursuant to Supreme Court Rule 304(a) (Ill. Rev. Stat. 1977, ch. 110A, par. 304(a)). On appeal, plaintiff contends that the trial court erred in dismissing the first three counts of the complaint.

We reverse the order as far as it dismissed counts I and II and remand for further proceedings. We affirm the order as far as it dismissed count III.

All four counts of plaintiff's complaint alleged the same basic set of facts.

Plaintiff is an Illinois corporation in the business of designing, manufacturing, and assembling containers for cosmetics. Defendant is a Delaware corporation doing business in Illinois through its division Craig Chemical and Adhesive Co. As such, defendant manufactures and sells adhesives (glue).

In April 1977, an employee of defendant, on two separate occasions, visited plaintiff's place of business. On the first occasion he was told by plaintiff that plaintiff needed a new glue to use in the assembly of a number of newly designed cosmetic packages. Defendant's employee told plaintiff he would direct defendant to make a special glue to meet plaintiff's need and deliver the glue to plaintiff.

On the second occasion, defendant's employee came with a sample of a special glue called "Craigbond 3231—A." He told plaintiff that this

glue was made specifically to meet plaintiff's need and that the glue would provide a permanent bond for the cosmetic packages. He instructed plaintiff in the use of the glue.

As a result of these two meetings, plaintiff purchased and used a quantity of the glue. Plaintiff sold a number of the new cosmetic packages to its customer. The packages fell apart and plaintiff had to recall and remake the packages with a different glue.

In count I of plaintiff's complaint, plaintiff alleged that defendant had breached an express warranty made by its employee, which express warranty was any or all of the warranties defined in section 2—313 of the Uniform Commercial Code (U.C.C.) (Ill. Rev. Stat. 1977, ch. 26, par. 2—313). In count II, plaintiff alleged defendant had breached an implied warranty of fitness for a particular purpose as defined in section 2—315 of the U.C.C. (Ill. Rev. Stat. 1977, ch. 26, par. 2—315).

Count III of plaintiff's complaint based recovery on negligence. In particular, plaintiff alleged defendant had committed the following negligent acts:

"(a) Failed to formulate correctly Craigbond 3231—A;

(b) Failed to test adequately Craigbond 3231—A;

(c) Failed to instruct adequately [plaintiff] in the proper use and application of Craigbond 3231—A."

Count IV based recovery on fraud and that count is not before us on appeal. All four counts demanded damages equalling plaintiff's losses which were over $300,000.

Defendant filed three separate motions attacking plaintiff's complaint. One was a motion to dismiss counts I and II as being barred by express disclaimer of all warranties. Another was a motion to strike the ad damnum clauses in all four counts of the complaint and to limit damages to $534, the purchase price of the glue. The third was a motion to dismiss counts III and IV as failing to state causes of action.

In support of its motion to dismiss counts I and II and in support of its motion to strike and limit damages, defendant alleged the following facts supported by affidavit.

Defendant asserted that it shipped the glue that was ordered by plaintiff in individual containers. On each container was a label which looked similar to the following:

"I M P O R T A N T
READ BEFORE USING

The following warranty only is made by us in lieu of all other warranties, express or implied, namely, that all goods are manufactured of standard materials. If any goods supplied by us prove on our inspection to be defective in material or workmanship, we will replace the same or refund to the purchaser the price of the

goods. Because of conditions over which we have no control, attending our customers' use of our materials, we in no event assume liability for any damages beyond the purchase price of the materials furnished by us. No representative of ours has authority to change this provision."

Defendant contended that this language became a part of the agreement and showed that there were no warranties made, express or implied, except for the warranty stated on the label, and showed that damages were limited to the purchase price of the glue.

Defendant also alleged that along with each shipment it sent an invoice stating the quantity delivered and the price due. This invoice was a half-page form, at the bottom of which was the following sentence in small print:

"Seller has not made and does not make any representation or warranty, express or implied, with respect to the merchantability or fitness of any product sold by it for the purposes of the buyer or otherwise. If the buyer does not accept our products on these terms, they are to be returned at once, unopened. In any event purchaser's damages cannot exceed the amount of the purchase price. The foregoing cannot be modified. Claims must be made five days from receipt of goods."

Defendant alleged, and plaintiff admitted, that plaintiff had paid the invoices sent and that plaintiff had not returned the glue containers unopened. Defendant contended that plaintiff had accepted this invoice term as part of the agreement because plaintiff paid the invoices and also because under the invoice term plaintiff was deemed to have accepted that term unless it returned the containers unopened. Defendant concluded that this invoice term proved that all the alleged warranties were disclaimed and that damages were limited to the purchase price of the glue.[1]

In support of its motion to dismiss counts III and IV of the complaint, defendant alleged, as far as count III was concerned, that there is no cause of action recognized which allows a party to sue a manufacturer in negligence to recover purely economic losses resulting from a defective product.

---

[1] It also appears that in October 1977, after plaintiff had discovered the defect in the glue, an officer of plaintiff wrote a letter to defendant "suggesting" that defendant bear the losses of plaintiff. In the letter, the officer said he was aware of the disclaimer language on the labels and the invoices, but went on to say, in effect, that under the circumstances he did not believe the disclaimers were effective. Though at the trial court hearing defendant put much reliance on this letter as showing that plaintiff knew of and accepted as binding the disclaimer clauses, defendant, in his brief on appeal, has apparently abandoned its dependence on this letter as being a basis for its motion to dismiss, except to indicate that plaintiff eventually learned of the disclaimers and to show there is some dispute as to what the facts are in this case.

After a hearing, the trial court dismissed counts I and II of the complaint as being barred by the express disclaimers of warranty found on the labels and the invoices. The trial court denied the motion to dismiss counts III and IV. Upon defendant's insistence, the trial court also ruled on the motion to strike the ad damnum clauses and to limit damages to $534. The trial court ruled that it was granted as far as it attacked counts I and II, though the trial judge said he believed it was unnecessary to grant the motion as to counts I and II since those counts had already been dismissed. The trial court denied the motion as far as it attacked counts III and IV.

Both parties moved the trial judge to reconsider his order. After a hearing, the trial court denied plaintiff's motion to reconsider and reaffirmed the dismissal of counts I and II. The trial court granted defendant's motion to reconsider on count III and dismissed count III as failing to state a cause of action. The trial court made its order as to counts I, II, and III final and appealable, and this appeal followed.

OPINION

I

Plaintiff first contends that the dismissal of counts I and II was improper because the disclaimer clauses were not part of the agreement of the parties. Plaintiff argues that the contract between the parties was entered into before the containers of glue or the invoices were received by plaintiff. Plaintiff concludes that, at best, the labels on the containers and the term in the invoices represented defendant's attempt to modify the pre-existing contract which could not be done without express agreement of the parties.

Defendant counters plaintiff's contention with two distinct arguments. Defendant first asserts that the contract for sale was not made until delivery of the containers and invoices. Defendant seems to argue that the delivery of the containers and the invoices was an acceptance of plaintiff's offer to purchase the glue. It would appear that defendant contends that each delivery of glue and each delivery of an invoice established separate and distinct contracts. Defendant concludes that plaintiff's acceptance of delivery of the glue and payment of the invoices constituted acceptance of the disclaimer terms on the labels and the invoices. Based on this assumption, defendant makes the following argument to show that both express and implied warranties have been effectively excluded in this case.

Defendant argues that the implied warranty of fitness for a particular purpose was effectively excluded under section 2—316(2) of the U.C.C. (Ill. Rev. Stat. 1977, ch. 26, par. 2—316(2)), which says:

"Subject to subsection (3), to exclude or modify the implied

warranty of merchantability or any part of it the language must mention merchantability and in case of a writing must be conspicuous, and to exclude or modify any implied warranty of fitness the exclusion must be by a writing and conspicuous. Language to exclude all implied warranties of fitness is sufficient if it states, for example, that 'There are no warranties which extend beyond the description on the face hereof.' "

■■ Defendant contends, and the trial court found, that the language on the labels and invoices was "conspicuous" as that term is defined in section 1—201(10) of the U.C.C. (Ill. Rev. Stat. 1977, ch. 26, par. 1—201(10)). Since the language was conspicuous and expressly excluded the implied warranty of fitness for a particular purpose that warranty cannot be alleged in this case.

Defendant next argues that any express warranties were also excluded by the clear language of the terms on the labels and the invoices. Though defendant admits that language which excludes express warranties must, in most circumstances, give way to language or conduct that creates express warranties, defendant claims that plaintiff is precluded from proving any express warranties in this case by the parol evidence rule. Defendant supports this argument with sections 2—316(1) and 2—202 of the U.C.C. Section 2—316(1) reads:

"Words or conduct relevant to the creation of an express warranty and words or conduct tending to negate or limit warranty shall be construed wherever reasonable as consistent with each other; but subject to the provisions of this Article on parol or extrinsic evidence (Section 2—202) negation or limitation is inoperative to the extent that such construction is unreasonable."

Defendant argues that, though negation of the express warranties in this case may be inoperative under this section, this section presupposes that plaintiff will be able to prove the express warranties. Defendant claims that under this section plaintiff cannot prove the prior oral warranties because of the parol evidence rule which is incorporated into the section. The parol evidence rule is found in section 2—202 of the U.C.C., which reads:

"Terms with respect to which the confirmatory memoranda of the parties agree or which are otherwise set forth in a writing intended by the parties as a final expression of their agreement with respect to such terms as are included therein may not be contradicted by evidence of any prior agreement or of a contemporaneous oral agreement but may be explained or supplemented

(a) by course of dealing or usage of trade (Section 1—205) or by course of performance (Section 2—208); and

(b) by evidence of consistent additional terms unless the court finds the writing to have been intended also as a complete and exclusive statement of the terms of the agreement."

Defendant somehow concludes that this section precludes plaintiff from proving any oral warranties, and thus the disclaimers of express warranties are controlling.

Defendant's second contention assumes that an oral agreement was made before delivery of the containers and the invoices, as plaintiff argues. But defendant argues that proof of this oral agreement is itself precluded by the parol evidence rule cited above. Defendant contends that the labels and the invoices were "confirmatory memoranda" as that term is used in section 2—202. As such, argues defendant, the terms of these confirmatory memoranda cannot be contradicted by any prior oral agreement. Thus, plaintiff is prohibited from proving the prior oral agreement and the terms of the labels and the invoices must control.

■■ We are concerned in this case with the propriety of an order dismissing the complaint. The rules underlying motions to dismiss are well settled. A motion to dismiss accepts all well-pleaded facts as true as well as all reasonable inferences favorable to the nonmoving party which can be drawn from those facts. (*Browder v. Hanley Dawson Cadillac Co.* (1978), 62 Ill. App. 3d 623, 379 N.E.2d 1206.) But it does not accept conclusions of law or conclusions of fact unsupported by allegations of specific fact upon which such conclusions rest. *Village of Niles v. City of Chicago* (1980), 82 Ill. App. 3d 60, 401 N.E.2d 1235.

The parties in the present case do not dispute, for the purposes of the present motion to dismiss, that a contract for sale was entered into. Nor does defendant dispute that express or implied warranties may have been created on the basis of the facts pleaded in plaintiff's complaint. Defendant simply alleges that such warranties were effectively disclaimed or cannot be proved because of the parol evidence rule.

The parties do dispute the time of the making of the present contract. Both parties conclude that the contract was made at different times. Neither party has addressed the issue as to whether plaintiff's conclusion must be accepted as true for the purposes of the motion to dismiss. We believe, however, that we need not discuss this underlying issue because whether we accept plaintiff's conclusion or defendant's conclusion as to the time of the making of the contract, we must conclude the dismissal of counts I and II of plaintiff's complaint was improper.

Accepting as true plaintiff's well-pleaded facts, we first address the effect of the parol evidence rule in this case since both of defendant's arguments depend on its applicability to the facts here. Defendant has not

contended that the labels on the containers or the invoices represent "a writing intended by the parties as a final expression of their agreement" as that clause is used under section 2—202 of the U.C.C. Defendant does argue that the labels or the invoices, or both, are "confirmatory memoranda" as that term is used in the section. Hence, the pertinent language of section 2—202 that is allegedly applicable here is the following:

> "Terms with respect to which the confirmatory memoranda of the parties agree * * * may not be contradicted by evidence of any prior agreement or of a contemporaneous oral agreement * * * ."

Though it may be questionable that the labels and the invoices are "confirmatory memoranda" of the agreement reached by the parties, we will, for the purpose of analysis, accept the defendant's contention and assume that they are. But even so, section 2—202 does not preclude plaintiff from proving by parol evidence the events leading up to delivery of the glue.

■■ The section requires that there be the same or at least similar terms in no less than two confirmatory memoranda, *one by each party*. Terms contained in a confirmatory memorandum by one party do not preclude parol evidence contradicting those terms unless such terms are also found in a confirmatory memorandum by the other party to the contract. Hence, the parol evidence rule defined in section 2—202 is simply inapplicable here since there was no confirmatory memorandum sent by plaintiff containing the same terms as defendant's alleged confirmatory memoranda.

We next assume that plaintiff is correct in concluding that the contract was made before the delivery of the glue or the invoices. We believe the section of the U.C.C. applicable to this situation is section 2—207 (Ill. Rev. Stat. 1977, ch. 26, par. 2—207), which reads:

> "(1) A definite and seasonable expression of acceptance or a written confirmation which is sent within a reasonable time operates as an acceptance even though it states terms additional to or different from those offered or agreed upon, unless acceptance is expressly made conditional on assent to the additional or different terms.
>
> (2) The additional terms are to be construed as proposals for addition to the contract. Between merchants such terms become part of the contract unless:
>
>> (a) the offer expressly limits acceptance to the terms of the offer;
>>
>> (b) they materially alter it; or

(c) notification of objection to them has already been given or is given within a reasonable time after notice of them is received.

(3) Conduct by both parties which recognizes the existence of a contract is sufficient to establish a contract for sale although the writings of the parties do not otherwise establish a contract. In such case the terms of the particular contract consist of those terms on which the writings of the parties agree, together with any supplementary terms incorporated under any other provisions of this Act."

We again assume that the labels and the invoices are confirmatory memoranda as defendant contends. Hence, they would be "written confirmation" of the prior oral agreement entered into by the parties as that term is used in section 2—207(1). Section 2—207(1) says that such a written confirmation operates as an acceptance. This appears to create an anomaly. The section says that a "confirmation" of a prior agreement can operate as an acceptance of an agreement that has already been accepted. This anomaly is resolved by examining the purpose of section 2—207.

The general purpose of section 2—207 is to allow parties to enforce their agreement, whatever it may be, despite discrepancies between an oral agreement and a written confirmation, and despite discrepancies between a written offer and a written acceptance. (*Alan Wood Steel Co. v. Capital Equipment Enterprises, Inc.* (1976), 39 Ill. App. 3d 48, 349 N.E.2d 627.) Also, it allows for additional terms stated in an acceptance or a written confirmation to become terms of the agreement in certain cases. (See Ill. Ann. Stat., ch. 26, par. 2—207, Uniform Commercial Code Comment 1 and Illinois Code Comment (Smith-Hurd 1963); J. White and R. Summers, Uniform Commercial Code §1—2 (1972).) Hence, the section allows a written confirmation to "operate" as an acceptance for the above purposes.

Since the language on the labels and invoices attempted to add additional terms to those agreed upon, then under section 2—207 we must determine if those terms became part of the agreement. We note that the language in the invoices includes the following sentence: "If the buyer does not accept our products on these terms, they are to be returned at once, unopened." Arguably, the invoice could not be a written confirmation that operates as an acceptance under section 2—207(1) because of the last clause of that section which says that a proposed acceptance does not act as an acceptance if "acceptance is expressly made conditional on assent to the additional or different terms." But according to the comments on this section this last clause can only refer to an "acceptance" that is expressly made conditional and not to a written confirmation because the confirmation serves only as a memorandum of

an agreement and cannot impose additional or different terms conditionally since the contract has already been formed. See Ill. Ann. Stat., ch. 26, par. 2—207, Illinois Code Comment (Smith-Hurd 1963).

Hence, the question is only whether the additional terms in the written confirmations became part of the agreement. For this, we must look at section 2—207(2), which states in part:

"Between merchants such terms become part of the contract unless:

\* \* \*

(b) they materially alter it \* \* \*."

A term disclaiming warranties, and we might add a term limiting remedies, is undoubtedly a term that materially alters a contract. (See section 2—207, Uniform Commercial Code Comment 4 (Ill. Ann. Stat., ch. 26, par. 2—207, and comments following (Smith-Hurd 1963)).) Thus, in the present case, we necessarily conclude that neither the disclaimer of warranties language nor the limitation of remedies language could become part of the contract under section 2—207(2).

We next consider defendant's argument that the contract was not made until delivery of the glue and the invoices. Defendant apparently contends that the delivery of the glue and the invoices acted as an acceptance of plaintiff's oral offer to purchase the glue. Again, section 2—207 precludes the language of the label or the invoices from becoming terms of the agreement.

Assuming that the labels on the containers operated as an acceptance, the language of the labels could not become part of the contract for the same reasons noted above. The offer to purchase was made with assumption that the express and implied warranties given would be part of the contract. The "acceptance" attempted to add additional terms materially altering that offer. Hence, the language of the labels could not become part of the contract.

As to the terms stated in the invoices, as we noted before if this is treated as an "acceptance" under section 2—207(1), then arguably the last clause of section 2—207(1) becomes operative. Hence, the "acceptance" was arguably made expressly conditional on acceptance of the new terms and could not operate as an acceptance, in which case it would operate as a counteroffer and no contract is formed. See *Tecumseh International Corp. v. City of Springfield* (1979), 70 Ill. App. 3d 101, 388 N.E.2d 460.

But if the parties go on to perform without knowledge of what has occurred, section 2—207(3) comes into operation. Under that section, if conduct of the parties recognizes the existence of a contract, then a contract for sale is formed even though the writings of the parties do not establish a contract. In such a case, the contract contains "those terms on which the writings of the parties agree." (Ill. Rev. Stat. 1977, ch. 26, par.

2—207(3).) All other terms are supplied by the provisions of the U.C.C. This section contemplates at least two writings, one by each party, or at least one writing expressly agreed to by both parties, containing the same or at least similar terms. Since the invoices do not contain a term which also appears as part of the alleged contract in a writing sent by plaintiff, the invoice terms cannot become part of the contract.

Accordingly, we must hold that it was improper, in this case, to dismiss counts I and II of plaintiff's complaint based on the disclaimer clauses found on the labels of the containers and in the invoices. We also hold that it was improper to strike the ad damnum clauses of plaintiff's complaint based on the limitation of damages language on the labels or the invoices. Because based on the well-pleaded facts the disclaimer terms could not be terms of the contract, we need not consider whether the disclaimer clauses were "conspicuous."

## II

Plaintiff next contends that it was improper to dismiss count III of the complaint as failing to state a cause of action. The trial court dismissed count III based on its reasoning that negligence will not lie against a manufacturer to recover purely economic losses resulting from a defective product. The trial court based its decision on the authority of *Alfred N. Koplin & Co. v. Chrysler Corp.* (1977), 49 Ill. App. 3d 194, 364 N.E.2d 100. In that case, in an action brought by a purchaser of a product against the manufacturer, the Appellate Court, Second District, held that a tort action in negligence would not lie against a manufacturer to recover purely economic losses resulting from a defective product.

Plaintiff admits that recovery of economic losses is all that is being sought in the present case. Plaintiff asks us to reject the reasoning of the foregoing case and adopt a cause of action in negligence against a manufacturer for purely economic losses resulting from a defective product. Plaintiff contends that the *Alfred N. Koplin* case was improperly decided. Plaintiff bases its argument on several Illinois cases that did not address the precise issue presented here (see *Rozny v. Marnul* (1969), 43 Ill. 2d 54, 250 N.E.2d 656; *Normoyle-Berg & Associates, Inc. v. Village of Deer Creek* (1976), 39 Ill. App. 3d 744, 350 N.E.2d 559; *Admiral Oasis Hotel Corp. v. Home Gas Industries, Inc.* (1965), 68 Ill. App. 2d 297, 216 N.E.2d 282; *Dittmar v. Ahern* (1962), 37 Ill. App. 2d 167, 185 N.E.2d 264), and on several cases from other jurisdictions which plaintiff alleges have accepted the proposition proposed here (see *City of LaCrosse v. Schubert, Schroeder & Associates, Inc.* (1976), 72 Wis. 2d 38, 240 N.W.2d 124; *Omni Flying Club, Inc. v. Cessna Aircraft Co.* (1974), 366 Mass. 154, 315 N.E.2d 885; *State ex rel. Western Seed Production Corp. v. Campbell* (1968), 250 Or. 262, 442 P.2d 215, *cert. denied* (1969), 393 U.S. 1093, 21

L. Ed. 2d 784, 89 S. Ct. 862; *Santor v. A and M Karagheusian, Inc.* (1965), 44 N.J. 52, 207 A.2d 305; *Cova v. Harley Davidson Motor Co.* (1970), 26 Mich. App. 602, 182 N.W.2d 800).

We believe the issue before us has been improperly phrased. The issue is not whether a cause of action in negligence should be recognized in general against a manufacturer for purely economic losses resulting from a defective product. The issue actually is whether a plaintiff can recover purely economic losses for the failure of a defendant to carefully perform duties imposed upon that defendant by a contract entered into between plaintiff and defendant. In other words, the issue is whether we should recognize a cause of action in negligence to recover purely contractual remedies for breach of contract.

We note that all of the Illinois cases cited by plaintiff, including *Alfred N. Koplin,* concern actions by plaintiffs not in privity of contract with the defendants. Also, all but one of the cases from other jurisdictions concern actions by plaintiffs not in privity of contract with defendants. The one nonconfirming case is *Omni Flying Club, Inc. v. Cessna Aircraft Co.* (1974), 366 Mass. 154, 315 N.E.2d 885, in which the Massachusetts Supreme Court held that negligence would lie as a basis for claiming economic losses in an action brought by a plaintiff in privity of contract with defendant. In *Omni,* defendant manufacturer sold plaintiff a defective airplane. The plaintiff alleged negligence in the manufacture of the airplane and sought damages resulting from the loss of use of that airplane and the cost of repairing it caused by such negligence. The Massachusetts court allowed this.

We do not know whether the Massachusetts court in *Omni* recognized the potential of its decision. Here, as in *Omni,* we are not faced with the question of any fraud or misrepresentation in the making of the contract or any tangible injury to person or property resulting from the alleged conduct on the part of the defendant. Here, as in *Omni,* we are faced with what is essentially a claim for breach of contract to recover a purely contractual remedy.

When parties dealing at arms-length enter into a contract, the law allows them, within reasonable limits, to shape the terms of that contract as they please. Within these limits, parties to a contract can exclude or restrict the remedies that a party may have for breach of that contract when the only losses that are suffered on account of that breach are economic losses. (See Ill. Rev. Stat. 1977, ch. 26, par. 2—719.) If the contract is breached, and economic losses are the only damages claimed, a court looks first to the contract to determine if and to what extent a party can recover those losses. If the contract is silent on the issue, the law of contract provides the answer.

In the present case, the parties are allegedly in privity of contract.

Plaintiff asks us to recognize a cause of action in negligence for failure to perform duties that are essentially contractual duties and to allow it to seek damages that are essentially contract damages. Hence, plaintiff asks to recognize a tort action for breach of contract. Though the *Omni* case appears to have done this, we cannot.

We believe what plaintiff asks us to do could well lead to the result that contract law would no longer be distinguishable from tort law. In effect, contract law would become a branch of tort law. The law of contract would be used merely to define the duties that one owes to another, but the law of tort would determine the remedy for violation of those duties.

In an action for negligence one is allowed to seek damages for all injuries proximately caused by a party's negligent conduct. If a valid contract provision limits the remedy for economic losses arising from breach of that contract to the price of the goods, under plaintiff's theory one would merely have to allege and prove that a party acted negligently in the performance of his contractual duties to escape such a limitation since the law of tort would define the extent of liability and not the contract or the law of contract.

The law does not condone breach of contract, but it does not consider it tortious or wrongful. If a party desires to breach a contract, he may do so purposely as long as he is willing to put the other party in the position he would have been had the contract been fully performed. (See Ill. Rev. Stat. 1977, ch. 26, par. 1—106(1).) Fault is irrelevant to breach of contract. Whether one intentionally, carelessly, or innocently breaches a contract, he is still considered to be in breach of that contract and the extent of his liability is generally the same.

Tort law, except for strict liability, is based on fault. One's conduct is considered wrongful. The extent of liability depends many times on the degree of fault. Intentional misconduct may give rise to greater liability than negligent conduct, especially considering the possibility of punitive damages. To adopt plaintiff's argument would be to adopt the position that the mere act of breach of contract should be considered a tortious act with the extent of liability depending on the degree of fault. When only economic losses are at issue, we believe that such a position is untenable.

■■ We find no adequate legal authority for accepting plaintiff's proposition. Plaintiff allegedly has a contract with defendant. Defendant has allegedly breached that contract. Plaintiff has suffered only economic losses. Plaintiff should have his remedy for breach of contract, but he should not be allowed to recover under tort law that which he may or may not be entitled to recover under the contract or under contract law. Hence, we necessarily hold that plaintiff in this case has failed to state a cause of action in negligence to recover purely economic losses.

Accordingly, for the reasons noted we reverse the order of the trial court dismissing counts I and II of plaintiff's complaint and the order striking the ad damnum clauses of the complaint and remand for further proceedings. We affirm the order as far as it dismissed count III of the complaint, but only to the extent count III fails to state a cause of action in negligence to recover purely economic losses since the parties in the present case are allegedly in privity of contract. We express no opinion as to whether such an action should be recognized where the parties are not in privity of contract.

Reversed and remanded in part; affirmed in part.

JOHNSON and ROMITI, JJ., concur.