**NATIONAL CAN CORPORATION, Plaintiff,**

v.

**WHITTAKER CORPORATION, Defendant.**

**No. 80 C 2008.**

United States District Court, N.D. Illinois, E.D.

Jan. 13, 1981.

Richard C. Bollow, Richard F. Bernstein, Jenner & Block, Chicago, Ill., for plaintiff.

Dennis A. McMahon, John M. Carroll, Mayer, Brown & Platt, Chicago, Ill., Ronald M. Greenberg, Whittaker Corporation, Los Angeles, Cal., for defendant.

## MEMORANDUM OPINION AND ORDER

SHADUR, District Judge.

National Can Corporation ("National Can") has filed an eight-count Complaint charging Whittaker Corporation ("Whittaker") with supplying two types of defective solid Polyvinyl Chloride ("PVC") compounds for use in making seals and gaskets for soft drink and beer bottle caps ("crowns").[1] Counts I through VI allege breach of various warranties, while Counts VII and VIII allege the tort of negligent misrepresentation. Whittaker has moved to dismiss the latter two Counts under Fed. R.Civ.P. 12(b)(6). For the reasons stated in this memorandum opinion and order, Whittaker's motion is granted.

National Can claims that Whittaker's two PVC compounds suffered from decomposition after assembly of the crowns, so that particles became visible in the beverage contained in the bottles. This created the need to destroy large quantities of National Can's finished products and, as alleged in each of the two Counts:

> As a proximate result of Whittaker's negligence, Hutchinson has sustained damage due to rejection of goods by its customers, claims by its customers, loss of profits, and other incidental and consequential damages.

There are no allegations of any physical injury resulting from the defective products.

In this diversity action all substantive questions must be decided in accordance with Illinois law. Although the Illinois Supreme Court has yet to speak directly to the issue presented here, under the circumstances this Court will follow the law as enunciated by the intermediate Illinois Appellate Courts, most particularly those that sit here in Chicago (the Illinois Appellate Court for the First District).[2]

1. PVC compounds were supplied by Whittaker's Providence Coatings and Chemicals Division to National Can's W. H. Hutchinson & Son Division. Although the Complaint refers to plaintiff as "Hutchinson" (the name of the division, not itself a corporate entity), to avoid possible confusion this opinion refers to each of the parties by its corporate name.

2. This Court's analysis of its role in a case like the present one differs somewhat from that of the Court of Appeals for the Third Circuit in *Jones & Laughlin Steel Corp. v. Johns-Manville Sales Corp.*, 626 F.2d 280 (3d Cir. 1980), which six months ago decided under Illinois law a question virtually identical to that posed by this case. *J & L* characterized the problem as one of predicting "how the state's highest court would decide were it adjudicating the matter," referring to *Commissioner v. Estate of Bosch*, 387 U.S. 456, 465, 87 S.Ct. 1776, 1782, 18 L.Ed.2d 886 (1967). Relying on some language in *Estate of Bosch*, the Third Circuit treated recent Illinois Appellate Court decisions as only part of the data providing input for the Court of Appeals' decision under Illinois law. But the dictum in *Estate of Bosch* (which was not itself a diversity case decided under the *Erie v. Tompkins* doctrine) did not purport to modify the essential theory of *Erie*: that a federal court must decide substantive questions in diversity cases in the same way that a state trial judge counterpart sitting in the same location would. Even though some of the extreme applications of the doctrine by *Erie*'s progeny (such as *Fidelity Union Trust Co. v. Field*, 311

Although National Can argues otherwise, it is unquestionable that the damages it asserts are of the sort characterized by the controlling Illinois cases as "economic loss." As Mr. Justice Simon of the Illinois Appellate Court stated just last month (immediately before taking his seat on the Illinois Supreme Court), in his thoughtful opinion in *Fireman's Fund American Insurance Cos. v. Burns Electronic Security Services, Inc.* (93 Ill.App.3d 298, 48 Ill.Dec. 729, 417 N.E.2d 131 (1st Dist.1980)):

> Economic loss, as we view it, is the loss of the benefit of the user's bargain. It is the loss of the service the product was supposed to render, including loss consequent upon the failure of the product to meet the level of performance expected of it in the consumer's business. In *Koplin* [49 Ill.App.3d 194] (at 199 [7 Ill.Dec. 113, 364 N.E.2d 100]), the court defined "economic loss" as loss resulting from a product "inferior in quality" which "does not work for the general purposes for which it was manufactured and sold," and we agree with that statement. We differ from the *Koplin* definition of economic loss, however, because in *Koplin* the court added to its definition a dichotomy between physical harm and economic loss. We see no reason to make the presence or absence of physical harm the determining factor; the distinguishing central feature of economic loss is not its purely physical characteristic, but its re-

lation to what the product was supposed to accomplish. For example, if a fire alarm fails to work and a building burns down, that is "economic loss" even though the building was physically harmed; but if the fire is caused by a short circuit in the fire alarm itself, that is not economic loss.

> The principal concern of the buyer is, of course, whether the product will accomplish what it is designed to do. Economic loss should be contrasted with loss which the parties could not reasonably be expected to have in mind such as hazards peripheral to what the product's function is. For example, if a defect in the fire alarm sets off a fire or even causes a stench which drives customers away and consequently results in loss of profits, without any physical harm, this is a peripheral hazard producing a non-economic loss.

> The definition of economic loss is inextricably linked to the reasons why that type of loss is removed from the field of tort liability. When goods are sold, their soundness is the core of the bargain. It is for the parties to decide what the consequences will be if the bargain founders. An entire body of law, contracts—of which product warranties is a part—is available to govern those areas of the relationship concerning which the bargain is silent. There is thus no need for the law of torts to define the rights of parties

U.S. 169, 61 S.Ct. 176, 85 L.Ed. 109 (1940)) have been cast into question, the rationale as expressed in *Fidelity Union*, 311 U.S. at 180, 61 S.Ct. at 179, has not:

> It is inadmissible that there should be one rule of law for litigants in the state courts and another rule for litigants who bring the same question before the federal courts owing to the circumstance of diversity of citizenship.

Where as in this case legal principles have been very recently proclaimed by the Illinois Appellate Court for the First District, with no contrary indications from the Illinois Supreme Court, this Court is obligated to adhere to those principles just as a judge of the Circuit Court of Cook County would. This is not one of the instances recently described by this Court as creating an inferior status for the federal courts in diversity cases:

> One of the many flaws in the *Erie v. Tompkins* doctrine is that it places the federal courts not on a parity with the state courts in diversity cases (as its proponents claim), but rather makes them subordinate. If a lower state court regards a decision of its higher court as outmoded or too broad, it may reach a different decision and leave review to the higher court. That luxury is not permitted to the federal court, which must slavishly follow the state precedent.

See in the latter respect the monumental work by the late Professor Crosskey, *Politics and the Constitution*, ch. XXVI (1953), and particularly the discussion at 916–19 ff. But in any event there is no need to resolve the possible tension between *Estate of Bosch* and the *Erie* progeny here, for the result is the same whether the approach of the Third Circuit or that suggested by this Court is followed.

in privity when they have done so themselves. When a buyer loses the benefit of his bargain because the goods are defective, that is, when he suffers economic loss, he has his contract to look to for remedies. Tort law need not, and should not, enter the picture. *Album Graphics.* Where the parties are in privity, all reasonably foreseeable consequential loss can be allocated in advance. Thus, in that situation where no personal injury is involved, recovery of economic loss should be governed by the law of warranty.[3]

In the *Fireman's Fund* appeal the choice presented was between strict liability in tort and contract theories of liability. But the Illinois Appellate cases (cited with approval in *Fireman's Fund*) had first established the identical doctrine of no recovery for economic losses in *negligence* actions. *Album Graphics, Inc. v. Beatrice Foods Co.,* 87 Ill.App.3d 338, 350, 42 Ill.Dec. 332, 341, 408 N.E.2d 1041, 1050 (1st Dist.1980); *Alfred N. Koplin & Co. v. Chrysler Corp.,* 49 Ill.App.3d 194, 7 Ill.Dec. 113, 364 N.E.2d 100 (1st Dist.1977); see *J & L,* 626 F.2d at 284–85 (3d Cir. 1980).[4]

National Can seeks to escape the force of this uniform body of law by characterizing its claim as one under the tort of negligent misrepresentation, recognized in *Rozny v. Marnul,* 43 Ill.2d 54, 60, 250 N.E.2d 656, 659 (1969); *McAfee v. Rockford Coca-Cola Bottling Co.,* 40 Ill.App.3d 521, 526, 352 N.E.2d 50, 54 (2d Dist.1976); and Restatement (Second) of Torts § 552. If the Court may be pardoned a bad pun, National Can is seeking to put new wine into old bottles.

Restatement § 552, as well as the Illinois case law National Can seeks to rely on, deals with an essentially different kind of situation from that involved here. Section 552 imposes liability for detrimental reliance upon "one who in the course of his business or profession supplies information for the guidance of others in their business transactions." That tort has been recognized almost exclusively in situations where information was supplied that damaged a plaintiff in its relations with *third parties,* see Green, *The Duty To Give Accurate Information,* 12 U.C.L.A.L.Rev. 464 (1965).

Though the tort of negligent misrepresentation may arguably be stretched to fit the claim in this case, it takes an impermissible double stretch to import general language as to the kind of damages recoverable in such tort cases (including economic loss, *Rozny,* 43 Ill.2d at 62, 250 N.E.2d at 660) into the present case. Such general language cannot prevail over the specific rejection of damages based on economic loss in the Illinois cases cited earlier in this opinion. To return full circle to the point discussed earlier in this opinion (both in the text at footnote 2 and in that footnote), this Court is certainly not free to be so inventive as to extend the recovery of economic loss to an area into which the Illinois courts themselves have not seen fit to venture.[5]

3. *Fireman's Fund* also defeats two other arguments advanced by National Can. One is the claim that the damages dealt with in the other cases relied on by Whittaker involved only repair and replacement of the defective product itself, while National Can's asserted damages are to other property. In *Fireman's Fund,* however, the rejected claim was for an $800,000 jewelry theft allegedly resulting from the failure of the alarm system sold by the defendant to the plaintiff's insured. As for the second argument, *Fireman's Fund* relied heavily on the existence of privity between plaintiff and defendant, a relationship that National Can had urged as a distinguishing factor lacking in the earlier *Koplin* case cited by Whittaker.

4. In *Fireman's Fund* and *Album Graphics* the tort claims were rejected on motions to dismiss, while in *Koplin* and *J & L* jury verdicts for plaintiffs were reversed as a matter of law. In either event the Illinois cases are direct precedent for dismissal here.

5. It should not be inferred that this Court would reach a different result if the case were not a diversity action, with the inhibitions that imposes. As an independent matter the Court views National Can as attempting in essence to establish a tort of negligent contract negotiation. Such a tort, if applied to impose damages for economic loss, would obliterate the boundary between tort and contract law that Illinois courts have drawn. Where as here the parties are in privity and have the full panoply of warranty remedies available to them, this Court would in any case follow the approach of *Fireman's Fund* to deny relief for economic loss on a tort theory.

*Conclusion*

Whittaker's motion to dismiss Counts VII and VIII is granted under Fed.R.Civ.P. 12(b)(6) for failure to state a claim upon which relief can be granted.