**TRANSAMERICA OIL CORPORATION,**
Plaintiff-Appellee,

v.

**LYNES, INC. and Baker International Corporation, Defendants-Appellants.**

No. 81–1505.

United States Court of Appeals,
Tenth Circuit.

Dec. 21, 1983.

Stephen J. Jones of Hershberger, Patterson, Jones & Roth, Wichita, Kan., for defendants-appellants.

M. Ralph Baehr of Nieto, Baehr & Hollander, Wichita, Kan. (P. David Egan, Peabody, Kan., on brief), for plaintiff-appellee.

Before McWILLIAMS and LOGAN, Circuit Judges, and ARRAJ, District Judge.[*]

LOGAN, Circuit Judge.

This appeal arises out of a diversity action in which the plaintiff, Transamerica Oil Corporation, prevailed in a jury trial against Baker International Corporation and its subsidiary, Lynes Inc., for damages resulting from the breach of an express warranty. We must determine, under the Kansas Uniform Commercial Code (UCC), the appropriate statute of limitations and the effect and validity of disclaimers of warranties and limitations of remedies in invoices accompanying shipments of equipment.

Transamerica is in the business of drilling and completing oil and gas wells. Transamerica's president, Harold Brown, saw defendants' advertisement for "production injection packers" in a trade journal. A packer is a device inserted into an oil and gas well to seal off one zone from another, generally to stop water from entering the well bore and interfering with production. Frequently, packers are employed for temporary use in holes that have been cased and cemented.[1] The defendants' advertisement, however, stated that its production injection packer was suitable for permanent use in open holes. Because Brown wanted to avoid the expensive casing and cementing process he was interested in the advertised device. He telephoned Lynes and spoke with a sales representative. Lynes then sent Brown additional advertising and descriptive literature. This literature also stated that the production injection packer was suitable for use as a permanent completion device in open well holes.

Later, Brown telephoned Baker's district manager, Jack Spencer, to whom the Lynes representative had referred him, and told Spencer that he was interested in purchasing the production injection packer for use as a permanent completion device for oil and gas wells in lieu of the casing and cementing process. The substance of that conversation is controverted. Spencer testified that he replied, "I think they would be applicable." Brown testified that Spencer "assured" him that the packers would work as advertised.

Plaintiff purchased ten production injection packers in six shipments from defendants during the period at issue here.[2] Defendants delivered invoices to plaintiff with at least five of those shipments. Each invoice contained language on its reverse side disclaiming any express or implied warranties other than that the products were free from defects in materials and workmanship. Each invoice also purported to limit the purchaser's remedy to replacement of or credit for defective equipment or parts. Plaintiff later filed suit, claiming that the production injection packers failed to perform properly. At trial, plaintiff dropped its claim based on implied warranty and submitted to the jury only its claim based on breach of express warranty. The jury awarded plaintiff $196,577.62, much more than the purchase price of the packers.

I

Defendants assert that plaintiff's claims are barred by the statute of limitations. The Kansas statute of limitations generally applicable to suits on oral contracts is three years. Kan.Stat.Ann. § 60–512. For actions brought pursuant to the UCC, however, the statute of limitations is four years. *Id.* § 84–2–725. If § 60–512 applies to the instant case, plaintiff's claims are barred; if § 84–2–725 applies, plaintiff's claims are timely.

---

[*] Honorable Alfred A. Arraj, Senior District Judge for the District of Colorado, sitting by designation.

1. This process involves lowering casing or pipe into the hole of an oil or gas well and forcing cement through the bottom and up the outside of the casing. In successful applications when the cement hardens it isolates the various zones to prevent water from migrating to the geologic formation from which the operator intends to extract oil or gas.

2. Plaintiff had previously purchased three other packers from defendants. It concedes that the statute of limitations bars suit as to those purchases.

In contending that § 60–512 applies defendants rely on *Miller v. William A. Smith Constructing Co.,* 226 Kan. 172, 603 P.2d 602 (1979). *Miller* held that the three-year statute for oral contracts, rather than the five-year statute for written contracts, applied to an agreement that was partly in writing and partly oral. However, *Miller* involved a rental rather than a sale of equipment, and apparently the parties did not contend that the UCC applied. The instant case involves a sale of goods within the meaning of the UCC, Kan.Stat.Ann. §§ 84–2–102, 84–2–105, and 84–2–106. Therefore, the Code's four-year statute of limitations applies. *See Atlas Industries, Inc. v. National Cash Register Co.,* 216 Kan. 213, 531 P.2d 41 (1975). That statute of limitations does not bar plaintiff's claim for breach of express warranty.

## II

▮ Under Kansas law, an express warranty may be created as follows:

"(a) Any affirmation of fact or promise made by the seller to the buyer which relates to the goods and becomes part of the basis of the bargain creates an express warranty that the goods shall conform to the affirmation or promise.

(b) Any description of the goods which is made part of the basis of the bargain creates an express warranty that the goods shall conform to the description."

Kan.Stat.Ann. § 84–2–313. Defendants contend that Spencer's statements and the descriptions in the trade journals regarding the packers were merely the sellers' opinions and thus were insufficient to create an express warranty. *See Topeka Mill & Elevator Co. v. Triplett,* 168 Kan. 428, 435, 213 P.2d 964, 969 (1950). But Brown testified that Spencer "assured" him that the production injection packers were suitable for use as permanent completion devices in open holes. This testimony, if believed, is sufficient to support a finding of an express warranty. *See Boehm v. Fox,* 473 F.2d 445, 449 (10th Cir.1973). Also, defendants' advertisements stated that the production injection packer was designed for permanent use in open holes. Under Kansas law, advertising may form a part of an express warranty. *Scheuler v. Aamco Transmissions, Inc.,* 1 Kan.App.2d 525, 528, 571 P.2d 48, 51 (1977). Thus, the trial court did not err in presenting the issue of express warranty to the jury unless language in the invoices disclaiming all express warranties was effective.

A party generally may not disclaim an express warranty under Kansas law. Kan. Stat.Ann. § 84–2–316(1) provides:

"Words or conduct relevant to the creation of an express warranty and words or conduct tending to negate or limit warranty shall be construed wherever reasonable as consistent with each other; but subject to the provisions of this article on parol or extrinsic evidence (K.S.A. 84–2–202) negation or limitation is inoperative to the extent that such construction is unreasonable."

The official UCC comment states that this section is designed to deal with "those frequent clauses in sales contracts which seek to exclude 'all warranties, express or implied.' It seeks to protect a buyer from unexpected and unbargained language of disclaimer by denying effect to such language when inconsistent with language of express warranty." U.C.C. § 2–316 official comment 1. The 1983 Kansas comment to the same section elaborates:

"Subsection (1) deals with attempted disclaimers of express warranties. Once made, express warranties rarely can be disclaimed.... The only exception to this rule is found when the language creating the warranty is oral and is made prior in time to a written disclaimer. Even in these circumstances, however, the language creating warranty takes priority unless the parol evidence rule, 84–2–202, applies. The parol evidence rule must apply on its own terms, however, and there is no intent to render ineffective all oral express warranties."

*See also Young & Cooper, Inc. v. Vestring,* 214 Kan. 311, 324, 327, 521 P.2d 281, 291, 293 (1974).

Section 84–2–202 declares that when a writing is intended by the parties "as a final expression of their agreement" its terms may not be contradicted by evidence of any prior agreement. The section in essence requires the trial court, before admitting parol or extrinsic evidence, to determine whether the parties intended some document—here the invoice—to be a final expression of their agreement on the terms of the sale. In *Jordan v. Doonan Truck & Equipment, Inc.,* 220 Kan. 431, 552 P.2d 881 (1976), the court refused to admit parol evidence of express warranty when both parties had read and signed a sales contract containing a disclaimer hand-written across its face. It ruled that in these circumstances the parties intended the purchase contract to be a final expression of their agreement. However, the court implied that a different rule would apply to unexpected and unbargained for disclaimers in a printed form prepared by the seller. *See* 552 P.2d at 884.

 The question whether the parties intended that a document constitute the final expression of their agreement is one of fact. 2 R. Anderson, *Uniform Commercial Code* 154–55 (3d ed. 1982); 3 A. Corbin, *Corbin on Contracts* § 595 (1960). Thus, we may reverse the trial court's finding only if it is clearly erroneous. *King v. Horizon Corp.,* 701 F.2d 1313, 1315 (10th Cir.1983). The district court here permitted the jury to consider the testimony of Brown and the advertisements because it concluded that the disclaimers on the invoices were not binding on the plaintiff. It seems clear the district court found the parties did not intend the invoice to constitute the final written agreement between the parties. There was no negotiated document signed by both parties evidencing the sale of one or all of these packers; Brown apparently entered the purchase orders personally or by telephone. The written documents the defendants rely on were each titled "Sales and Service Invoice." The introductory sentence on the face of the invoice above the signature line for the purchaser's agent begins, "I certify that the above materials or services have been received." That sentence also purports to require the person signing to declare that he or she is authorized to sign the memorandum as agent of the owner or contractor. These words indicate that the document is a delivery receipt and possibly a billing statement, but not a fully integrated contract.

 The sentence above the agent's signature line also declares that the "materials or services have been received on the terms and conditions set forth on the reverse side hereof, which the undersigned has read and understood." [3] The reverse side contains a full page of statements disclaiming express and implied warranties, making prices, rates, and terms subject to change without notice, designating other charges that will be shifted to the purchaser, and requiring payment within thirty days. We believe the district court correctly ruled that the invoice was not intended to express the final agreement of the parties.

Because only the express warranty issue was submitted to the jury the court properly excluded the warranty disclaimer language written on the back of the invoice from the jury's consideration. The jury had only to determine whether the advertising and oral statements by Spencer constituted express warranties that the packers would work properly in open holes.

### III

 Our analysis of the express warranty issue set forth above does not resolve the damages issue. Neither defendants' advertisements nor Brown's testimony directly addressed damages for breach of warranty. Further, damages limitations are controlled by different UCC sections and different policy considerations than warranties.

---

**3.** The entire sentence reads: "I certify that the above materials or services have been received on the terms and conditions set forth on the reverse side hereof, which the undersigned has read and understood, that the basis for charges is correctly stated and that I am authorized to sign this memorandum as agent of owner or contractor."

The invoices Baker sent with the packers contained a clause purporting to limit remedies for breach of warranty to "replacement of or credit for defective equipment or parts." The trial court refused to allow any evidence of the limitation on the invoices to go to the jury. The court also found that the limitation of remedies was unconscionable and that the invoice language was an attempt to alter a contract the parties had previously entered into.

We treat unconscionability first. Kan. Stat.Ann. § 84–2–316(4), which governs limitations of remedies, declares, "Remedies for breach of warranty can be limited in accordance with the provisions of this article on liquidation or limitation of damages and on contractual modification of remedy (K.S.A. 84–2–718 and 84–2–719)." Section 84–2–719 expressly declares that the parties by contract may limit "the buyer's remedies to return of the goods and repayment of the price or to repair and replacement of nonconforming goods or parts" unless the limitation is unconscionable. It also declares, "Limitation of consequential damages for injury to the person in the case of consumer goods is prima facie unconscionable but limitation of damages where the loss is commercial is not." *Id.* There was no personal injury involved in the instant case.

Although the Code does not define unconscionability, the purpose of the concept is to prevent oppression and unfair surprise. U.C.C. § 2–302 official comment 1. In *Wille v. Southwestern Bell Telephone Co.,* 219 Kan. 755, 549 P.2d 903 (1976), the court set out the factors relevant to whether an agreement is unconscionable:

> "(1) The use of printed form or boilerplate contracts drawn skillfully by the party in the strongest economic position, which establish industry-wide standards offered on a take it or leave it basis to the party in a weaker economic position; (2) a significant cost-price disparity or excessive price; (3) a denial of basic rights and remedies to a buyer of consumer goods; (4) the inclusion of penalty clauses; (5) the circumstances surrounding the execution of the contract, includ-

ing its commercial setting, its purpose and actual effect; (6) the hiding of clauses which are disadvantageous to one party in a mass of fine print or in places which are inconspicuous to the party signing the contract; (7) phrasing clauses in language that is incomprehensible to a layman or that divert his attention from the problems raised by them or the rights given up through them; (8) an overall imbalance in the obligations and rights imposed by the bargain; (9) exploitation of the underprivileged, unsophisticated, uneducated and the illiterate; and (10) inequality of bargaining or economic power."

549 P.2d 906–07 (citations omitted).

Applying the standards of *Wille,* we cannot conclude that a clause excluding a seller's liability for consequential commercial damages is unconscionable on its face. It serves the commercially reasonable purpose of allocating unknown or undeterminable risks. *See* U.C.C. § 2–719 official comment 3. Nothing in the facts of this case renders the disclaimers unconscionable. Both parties are business entities with much experience in the oil and gas industry. Plaintiff does not appear to be in a substantially weaker economic position than defendants. There is no apparent excessive price. This is a commercial not a consumer setting. The language limiting remedies is on the back of the invoice form, but language on the front, in red print, refers to the terms and conditions of sale on the reverse side. The limitation of remedies appears in the first paragraph on the reverse of each invoice and is written in fairly large, legible print and stated in clear, concise language. Therefore, we disagree with the trial court that the limitation of damages on the invoices is unconscionable.

 We also cannot agree with the trial court's conclusion that the parties entered into a complete oral contract long before delivery of the invoices. Nothing in the advertisements or the conversation with Spencer as related by Brown dealt with delivery, terms of payment, or remedies for default. Plaintiff did not commit to the

order until Brown actually placed the order. The invoice sent with the goods would surely qualify as an acceptance or written confirmation. *See Album Graphics, Inc. v. Beatrice Foods Co.,* 87 Ill.App.3d 338, 42 Ill. Dec. 332, 408 N.E.2d 1041 (1980); U.C.C. § 2–207 official comment 1. Thus, the provisions in the invoice are relevant in defining the contract.

 Kan.Stat.Ann. § 84–2–207 provides:

"(1) A definite and seasonable expression of acceptance or a written confirmation which is sent within a reasonable time operates as an acceptance even though it states terms additional to or different from those offered or agreed upon, unless acceptance is expressly made conditional on assent to the additional or different terms.

(2) The additional terms are to be construed as proposals for addition to the contract. Between merchants such terms become part of the contract unless:

(a) the offer expressly limits acceptance to the terms of the offer;

(b) they materially alter it; or

(c) notification of objection to them has already been given or is given within a reasonable time after notice of them is received."

The invoices do not purport to condition assent on the buyer's acceptance of their terms. Thus, provisions in the unsigned invoices not previously agreed upon or different from an earlier understanding constitute mere proposals for additions to the agreements under § 84–2–207(2). Proposals for additions, if both parties are merchants, became part of the contract unless they "materially alter" it. *Id.* Both the plaintiff and the defendants are "merchants." *See* Kan.Stat.Ann. § 84–2–104.

 The issue of whether a term materially alters the contract for the purposes of § 2–207(2)(b) is a question of fact that must be determined in light of the facts of the case and the parties' expectations. *See Medical Development Corp. v. Industrial Molding Corp.,* 479 F.2d 345, 348 (10th Cir.1973); *Ebasco Services Inc. v. Pennsylvania Power & Light Co.,* 402 F.Supp. 421, 442–43 (E.D.Pa.1975). A limitation of remedy generally constitutes a material alteration, *see, e.g., Album Graphics, Inc. v. Beatrice Foods Co.,* 87 Ill.App.3d 338, 42 Ill.Dec. 332, 408 N.E.2d 1041 (1980), unless the buyer expressly agrees to the limitation. *See Dorton v. Collins & Aikman Corp.,* 453 F.2d 1161, 1169 (6th Cir.1972); U.C.C. § 2–207 official comments 3 and 4.

 In the instant case, the trial court simply excluded from evidence the limitations of remedy stated on the invoices. We hold that this was error. We agree with the trial court's ruling that employees of plaintiff other than Brown who signed invoices lacked authority to act as contracting agent for plaintiff.[4] But Brown, plaintiff's president, signed at least one of the invoices. Thus, the invoices are relevant to the issue whether plaintiff expressly agreed to the limitation of liability. Moreover, all of the invoices are relevant to defendant's contention that plaintiff accepted the limitation of liability through course of dealing. *See generally* Kan.Stat.Ann. § 84–1–205. Therefore, on remand, defendants are entitled to introduce the invoices and other evidence that Brown was aware of the limitations of liability.

 Defendants also are entitled to introduce evidence that the exclusive remedy of replacement or credit constitutes a usage of trade in the oil and gas industry. The Kansas U.C.C. § 84–2–719, permits the parties to limit remedies by "agreement." Section 84–1–201(3) defines "agreement" to include usage of trade. Absent an express term to the contrary, then, a term constituting usage of trade is a binding term of the agreement. J. White & R. Summers, *Uni-*

---

4. Two other Transamerica employees, Fred Waymire and Lonnie Sterner, also signed invoices. Waymire was a tool pusher or foreman and Sterner was a bulldozer driver. Defendants introduced no evidence that either Sterner or Waymire possessed the requisite actual or apparent authority to bind plaintiff to contracts. *See generally* H. Henn & J. Alexander, *Laws of Corporations* 593–604 (3d ed. 1983).

*form Commercial Code* 99 (2d ed. 1980). Usage of trade may add an exclusive remedy to an agreement. *Posttape Associates v. Eastman Kodak Co.,* 537 F.2d 751, 756–57 (3d Cir.1976). Thus, if it constitutes usage of trade, a limited remedy for breach of warranty is enforceable if it is not unconscionable and does not fail of its essential purpose. The court erred, then, in excluding evidence of usage of trade and in failing to instruct the jury on that theory.

## IV

In summary, the case must be reversed and remanded. The defendants were entitled to present to the jury their evidence that plaintiff had expressly agreed to the limitation of liability. Because Brown signed one invoice containing the limitation defendants were entitled to have the jury see that invoice in their assessment of Brown's credibility when he testified that he was not aware of the limitation. Defendants were entitled to introduce the other invoices as course-of-dealing evidence that the jury could weigh to determine whether the parties had expressly agreed to a limitation of remedy. Finally, defendants were entitled to present evidence of trade usage, that limitations of this type were so pervasive that the parties must have contracted with the understanding that plaintiff's remedy would be limited to refund, credit, or replacement of any packer that did not perform as warranted. We believe we need not comment specifically on the instructions the court did not give. The appropriate additional instructions are apparent under our analysis. Because we conclude that the court properly submitted the issue of liability on the express warranty to the jury on correct instructions, we order that the new trial be limited to damages only.

REVERSED AND REMANDED.